UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THERESE LORE,

                    Plaintiff,                            5:00-CV-1833-DNH-DEP

                  v.

CITY OF SYRACUSE; CITY OF SYRACUSE
POLICE DEPARTMENT; CHIEF OF POLICE
JOHN FALGE, in his individual and official
capacity; FIRST DEPUTY CHIEF DANIEL
BOYLE, in his individual and official capacity;
DEPUTY CHIEF ROBERT TASSONE, in his
individual and official capacity; CITY OF
SYRACUSE MAYOR ROY BERNARDI; in his
individual and official capacity; LT. MIKE
RATHBUN, in his individual and official
capacity; CAPT. MIKE KERWIN, in his
individual and official capacity; RICK GUY,
CITY CORPORATION COUNSEL, in his
individual and official capacity; MICHAEL
LEMM, in his individual and official capacity;
and JOHN DOE, in his individual and official
capacity,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:

A.J. BOSMAN, ESQ.
Attorney for Plaintiff
258 Genesee Street
Suite 301
Utica, New York 13502

KEVIN E. HULSLANDER, ESQ.
Attorney for Defendants
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street
Suite 600
Syracuse, New York 13202

GABRIELLE HOPE, ESQ.
Attorney for Defendants
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street
Suite 600
Syracuse, New York 13202

THOMAS J. MILLER, ESQ.
Attorney for Defendant Michael Lemm
Office of Thomas J. Miller
314 East Fayette Street
Syracuse, New York 13202


DAVID N. HURD
United States District Judge

**TABLE OF CONTENTS**

**INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 5 -**

**FACTUAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 6 -**

**DISCUSSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 10 -**

    **Motion for Summary Judgment.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 10 -**

    **Plaintiff's Title VII Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 11 -**

        **Individual Liability.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 11 -**

        **Statute of Limitations.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 12 -**

        **Gender Discrimination Claims Under Title VII.** . . . . . . . . . . . . . . **- 14 -**

                **A *Prima Facie* Case of Discrimination.** . . . . . . . . . . **- 14 -**

                **Legitimate, Non-discriminatory Reasons.** . . . . . . . . **- 18 -**

                **Establishing Pretext.** . . . . . . . . . . . . . . . . . . . . . . . . . **- 21 -**

        **Retaliation Claims Under Title VII.** . . . . . . . . . . . . . . . . . . . . . . . . **- 24 -**

                **A *Prima Facie* Case of Retaliation.** . . . . . . . . . . . . . **- 24 -**

                **Legitimate, Non-Retaliatory Reasons.** . . . . . . . . . . . **- 30 -**

                **Establishing Pretext.** . . . . . . . . . . . . . . . . . . . . . . . . . **- 34 -**

        **Hostile Work Environment Claims Under Title VII.** . . . . . . . . . . . . **- 40 -**

    **Plaintiff's Claims Against Defendants Pursuant to the New York's Human**

    **Rights Law.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **- 44 -**

        **A *Prima Facie* Case of Discrimination.** . . . . . . . . . . . . . . . . . . . . **- 45 -**

                **The Removal as Public Information Officer.** . . . . . . **- 45 -**

**The Transfer to the Technical Operations**

**Section. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 46 -**

**The Transfer to the Uniform Patrol Division. . . . . . - 47 -**

**Plaintiff's Claims Under 42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . - 49 -**

**Plaintiff's Equal Protection Clause Claim Pursuant to § 1983. . . - 50 -**

**Plaintiff's Due Process Clause Claim Pursuant to § 1983. . . . . . - 52 -**

**Plaintiff's First Amendment Claim Pursuant to § 1983. . . . . . . . . - 53 -**

**Plaintiff's Defamation Claim Under New York State Law. . . . . . . . . . . . . . - 55 -**

**Plaintiff's Claim of Intentional Infliction of Emotional Distress. . . . . . . . . - 56 -**

**Plaintiff's Breach of Contract Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 58 -**

**Plaintiff's Claims Against Defendant Lemm and Motion to Amend the**

**Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 58 -**

**Plaintiff's First Amendment Claim Against Defendant Lemm Pursuant**

**to § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 59 -**

**Plaintiff's Motion to Amend the Second Amended Complaint. . . - 59 -**

**Plaintiff's HRL Cause of Action Against Defendant Lemm. . . . . . - 61 -**

**CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 63 -**

**ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 65 -**

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Therese Lore brings suit against defendants City of Syracuse, City of Syracuse Police Department ("SPD"), SPD Chief of Police John Falge, SPD First Deputy Chief Daniel Boyle, SPD Deputy Chief Robert Tassone, Syracuse Mayor Roy Bernardi, SPD Lieutenant Mike Rathbun, SPD Captain Mike Kerwin, Syracuse Corporation Counsel Rick Guy, Michael Lemm, and John Doe. Plaintiff alleges: (1) she was discriminated against on the basis of her gender while working as a SPD police officer in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), 42 U.S.C. § 1983 ("§1983"), and the New York Human Rights Law, N.Y. EXECUTIVE LAW § 296 (2000); (2) that she was retaliated against for reporting and complaining of discrimination in violation of Title VII and § 1983; (3) that she was harmed as a result of a hostile work environment in violation of Title VII; (4) that she suffered injury as a result of defendants' defamatory remarks; and (5) that defendants breached a contract negotiated by the Police Officers' Union on behalf of plaintiff and other police officers.

It should be noted from the outset that this case entails a lengthy procedural history since the filing of plaintiff's original complaint in December of 2000. A number of preliminary motions have already been decided, and the parties have engaged in a highly contested discovery period as well as substantial correspondence. Additionally, various requests for deadline extensions were issued and granted. The case was reassigned to the undersigned on February 21, 2008. Oral argument for the present motions was heard on May 2, 2008.

Presently, defendants City of Syracuse, SPD, SPD Chief of Police John Falge, SPD First Deputy Chief Daniel Boyle, SPD Deputy Chief Robert Tassone, Syracuse Mayor

Roy Bernardi, SPD Lieutenant Mike Rathbun, SPD Captain Mike Kerwin, and Syracuse

Corporation Counsel Rick Guy (hereinafter referred to together as "defendants") move for

summary judgment  pursuant to Federal Rule of Civil Procedure 56.  Defendant Lemm also

moves for summary judgment on additional grounds not asserted by defendants.  Plaintiff

opposes both motions for summary judgment and files a cross a motion for leave to amend

her complaint pursuant to Federal Rule of Civil Procedure 15.  Defendant Lemm opposes

plaintiff's cross motion for leave to amend.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiff is a female police officer within the SPD.  After approximately twelve years

of service, plaintiff was promoted to the rank of Sergeant in 1990.  Plaintiff remains employed

by the SPD and has not been demoted from the rank of Sergeant.

On May 10, 1999, plaintiff was removed from the position of Public Information

Officer ("PIO").  On June 7, 1999, plaintiff was transferred to the Technical Operations

Section of the SPD, resulting in a change of her responsibilities but no change in her salary

or benefits.  On or about August 23, 1999, plaintiff was transferred from the Technical

Operations Section to a supervisory position in the Uniform Patrol Division of the SPD.  The

August 23, 1999, transfer did not result in any change of salary, but plaintiff was directed to

surrender her SPD issued car, beeper, and telephone.  On or about November 9, 1999, a

male sergeant was assigned to a position within the SPD that plaintiff had requested.

Plaintiff regularly filed grievances with the Police Officers' Union in regard to the

above events.  On December 7, 1999, the Union entered into a resolution of plaintiff's

grievances.  As a result of the negotiated settlement, plaintiff was transferred to the Crime

Prevention Unit of the Community Relations Division within the SPD on January 26, 2000.

Upon this last transfer, plaintiff was ordered to wear a police uniform while performing her duties.

Plaintiff alleges on February 21, 2000, a male sergeant was transferred to a position within the Community Relations Division for which plaintiff had requested assignment. Plaintiff alleges Defendants reported the position was not available and would not be filled. Defendants deny plaintiff's allegations relating to the February 21 assignment within the Community Relations Division.

On June 9, 2000, plaintiff was removed from the Marine Patrol Unit. On July 3, 2000, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination by way of how she was treated at work and unequal assignments of overtime. On or about July 4, 2000, plaintiff went to the Audit Budget and Control ("ABC") Office and took possession of the pay stubs of three male sergeants. Plaintiff made copies of the pay stubs using a SPD photocopier and returned the pay stubs to the ABC Office. Upon learning of plaintiff's actions, Defendant Boyle directed the ABC Office staff to bar plaintiff from the ABC Office. Plaintiff alleges Defendant Boyle said, "...and since she's suing us, tell her to do it on a[n internal memo], because I don't want to see her."

On August 24, 2000, plaintiff filed a supplemental EEOC claim alleging unlawful retaliation stemming from her decision to file a complaint of discrimination. On September 20, 2000, plaintiff presented copies of the pay stubs at an arbitration proceeding as evidence of unequal overtime assignments for female sergeants as compared to male sergeants. Plaintiff alleges that counsel for the SPD informed her attorney at the arbitration proceeding that the SPD would forego any criminal or administrative charges in exchange for plaintiff's agreement to discontinue her EEOC complaint. On September 22, 2000, the three

sergeants whose pay stubs plaintiff photocopied filed a complaint with the Police Officer's Union (the "Union") asking the Union for a departmental and criminal investigation into plaintiff's actions.  On September 29, 2000, defendant Boyle issued a departmental memo directing that paychecks and pay stubs would from then onward be issued in sealed envelopes in an effort to protect employee privacy.

On November 2, 2000, the SPD suspended plaintiff for ten days without pay for using a SPD photocopier for personal use.  Plaintiff alleges defendants contacted newspapers afterwards and publicly commented on plaintiff's suspension.  Plaintiff also alleges defendants misrepresented that plaintiff had copied paychecks instead of pay stubs.

On November 3, 2000, plaintiff reported a minor injury she claims to have occurred while on duty.  Defendant Kerwin rejected plaintiff's report as false and responded by reading plaintiff Miranda warnings for knowingly filing a false injury report–a criminal offense.

Plaintiff alleges another dispute and act of retaliation occurred on November 28, 2000.  On said date, plaintiff informed defendant Rathbun that she wished to work overtime. After a dispute over whether defendant Rathbun filled the overtime assignment before contacting plaintiff, plaintiff alleges defendant Rathbun said, "Why don't you just go up and see the Chief and tell him you want to drop everything, forget everything, and everything will be fine."

In December of 2000, plaintiff made an application for a Temporary Restraining Order.  Afterwards, plaintiff received harassing and threatening telephone messages. Plaintiff alleges defendant Lemm, a retired SPD police officer, left a message for her over the telephone during which he said, "Hey you 941 bitch, haven't you retired yet?  Nobody wants

you anymore."[1]  Plaintiff asserts that she recognized defendant Lemm's voice and his use of SPD police parlance.  In response, Plaintiff filed a criminal complaint against defendant Lemm and provided tape recordings to the Sheriff's Department and Internal Affairs Division of the SPD.

Plaintiff alleges she received another harassing phone call but was unable to identify the caller.  She again notified the Sheriff's Department and the Internal Affairs Division of the SPD and alerted them of her suspicion that the call was from a current SPD police officer named Steve Weigel.  Sometime in the spring of 2001, defendant Lemm received a phone call from Officer Weigel and the two men arranged to meet in person. Officer Weigel had somehow received a copy of plaintiff's complaint filed with the Sheriff's Department and Internal Affairs Division and provided defendant Lemm with his own copy upon meeting with him.

Defendant Lemm admits that no other person contacted him in regard to plaintiff's criminal complaint of aggravated harassment stemming from the threatening phone calls she claims to have received.  After meeting with Officer Weigel, defendant Lemm contacted the Sheriff's Department on his own accord and denied plaintiff's allegations.  After a meeting with members from the District Attorney's Office, defendant Lemm accepted an offer for an adjournment in contemplation of dismissal ("ACD") with a six month probation period.

On March 5, 2001, at about 12:30 p.m., defendant Rathbun directed plaintiff to return to the Public Safety Building while she was on duty.  Approximately one hour later, plaintiff called defendant Rathbun and reported she was en route to the Public Safety

---

[1]The term "941" references a section of the New York State Mental Health Law for an emotionally unstable person.

Building from the police garage.  Upon her arrival at the Public Safety Building, plaintiff

indicated she had been at the police garage on a police detail.  On the following day, the

Internal Affairs Division launched an investigation of plaintiff's conduct because (1) caller ID

indicated plaintiff did not call defendant Rathbun from either her police issued cellular phone

or the police garage telephone, and (2) calls made to the police garage in an effort to locate

plaintiff indicated plaintiff had not been seen by anyone at the police garage for several

hours.

## III.  DISCUSSION

### A.  Motion for Summary Judgment

Summary judgment is warranted when the pleadings, depositions, answers to

interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact.

FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most

favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  Initially, the burden is on the moving party to

demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

U.S. 317, 323, 106 S. Ct. 2458 (1986).  After the moving party has satisfied its burden, the

non-moving party must assert specific facts demonstrating there is a genuine issue to be

decided at trial. FED. R. CIV. P. 56; Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511.

The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at

1356.  There must be sufficient evidence upon which a reasonable fact finder could return a

verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## B.  Plaintiff's Title VII Claims

Plaintiff alleges she was discriminated against on the basis of her sex, retaliated against for complaining about said discrimination, and subjected to a hostile work environment, all in violation of, *inter alia*, Title VII.[2]  For purposes of efficiency, the arguments concerning questions of individual liability and the applicable statute of limitations will be considered before the Court addresses each of plaintiff's claims under Title VII.

### 1.  Individual Liability

Plaintiff brings her claims against defendants in both their personal and official capacities.  Defendants contend that the Title VII claims against the defendants in their individual capacities are subject to dismissal because Title VII does not provide for individual liability.  Although individual liability for workplace discrimination is sometimes possible under various state and federal causes of action, controlling precedent holds there is no individual liability under Title VII. Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524

---

[2] See 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."); 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter. . . ."); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-65, 106 S. Ct. 2399, 2404-05 (1986) (holding that Congress enacted Title VII with the intent to prohibit a discriminatorily hostile or abusive work environment).

U.S. 742 (1998).   Accordingly, plaintiff's Title VII claims against defendants in their individual capacities will be dismissed.

### 2.  Statute of Limitations

Defendants also contend that some of plaintiff's Title VII claims are time-barred.  In particular, defendants argue that three of plaintiff's allegations are time barred under Title VII: (1) the removal of plaintiff on May 10, 1999, from her position as Public Information Officer; (2) the transfer of plaintiff on June 7, 1999, to the Technical Operation Section of the SPD; and (3) the transfer of plaintiff on August 16, 1999, to Uniform Patrol Division, resulting in the surrender of plaintiff's police-issued car, beeper, and telephone.  Plaintiff filed an initial complaint with the EEOC on July 3, 2000 and a supplemental complaint on August 24, 2000. Following the EEOC's decision not to pursue the complaint itself, plaintiff was granted leave to file the instant civil action on March 26, 2001.

Title VII requires a plaintiff file a complaint with the EEOC within 300 days after the alleged discriminatory or retaliatory act occurs. See 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 104-05, 122 S. Ct. 2061, 2068 (2002).  The Supreme Court explained in Morgan that claims of discrimination and retaliation constitute discrete acts and therefore are subject to a different statutory time period as compared to Title VII claims alleging a hostile work environment. Morgan, 536 U.S. at 113, 117, 122 S. Ct. at 2072, 2074.  Further, the Court rejected the plaintiff's argument that discriminatory acts were part of a single unlawful employment practice and held that each specific act of discrimination or retaliation started a new 300 day time period within which the plaintiff had to file a claim with the EEOC. Id. at 113, 122 S. Ct. at 2072.

In response, plaintiff puts forth the same argument rejected in Morgan.  Plaintiff concedes some of the alleged acts of discrimination and retaliation fall outside the 300 day filing period but nonetheless argues her claims are not time barred because "all of the acts alleged are part of one unlawful employment practice." Pl.'s Mem. Opp'n Summ. J., 3. Plaintiff reasons that so long as some of her claims are timely, all of her related claims of discrimination and retaliation are not barred by the applicable statute of limitations.  Plaintiff's reasoning is flawed in light of the decision in Morgan, however.  The Morgan Court made clear that Title VII claims alleging acts of discrimination or retaliation occurring after the 300 day time period are time barred, "even when they are related to acts alleged in timely filed charges." 536 U.S. at 113, S. Ct. at 2072.  As a result, the three alleged incidents noted above and occurring before September 19, 1999, i.e., 300 days before the filing of plaintiff's initial EEOC complaint, will be dismissed as untimely and may not be considered in the context of plaintiff's discrimination or retaliation claims arising under Title VII.[3]

_____

[3] The ruling as to the statute of limitations is limited to plaintiff's claims for discrimination and retaliation.  Defendants do not argue plaintiff's hostile work environment claim is untimely, and plaintiff accurately contends that her hostile work environment claim may include allegations falling outside the 300 day filing requirement.  Morgan made a distinction between discrete acts of discrimination or retaliation and hostile work environment claims arising under Title VII.  Morgan, 536 U.S. at 115, 122 S. Ct. at 2073 ("Hostile environment claims are different in kind from discrete acts.").  The Court reasoned that actions leading to a hostile work environment constitute a single unlawful employment practice, and therefore, incidents falling outside the 300 day filing period may be considered in the context of a hostile work environment claim so long as at least one act consisting of the hostile work environment is timely. Id. at 118, 122 S. Ct. at 2075. Accordingly, plaintiff's hostile work environment claim may include acts that occurred before September 19, 1999, because plaintiff alleges other timely incidents contributed to a hostile work environment.

### 3.  Gender Discrimination Claims Under Title VII

Defendant argues that plaintiff does not present a genuine issue of material fact as to the merits of her Title VII gender discrimination claim.  Discrimination claims arising under Title VII are subject to the burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973) and further developed in Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093-94 (1981). First, a plaintiff must demonstrate a *prima facie* case of gender discrimination. McDonnell Douglas, 411 at 802, 93 S. Ct. at 1824.  Second, after the plaintiff establishes a *prima facie* case, the burden shifts to the defendant-employer to offer a legitimate and non-discriminatory reason for the action(s) giving rise to plaintiff's allegations of discrimination. Id.  Third, if the defendant sufficiently produces a non-discriminatory explanation, the burden shifts back to the plaintiff to show that defendant's proffered explanation is nothing more than pretext for unlawful discrimination. Id. at 804, 93 S. Ct. at 1825.  Despite this burden shifting analysis, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253, 101 S. Ct. at 1093.

### a.  A *Prima Facie* Case of Discrimination

The plaintiff in a discrimination case is first required to demonstrate a *prima facie* case of discrimination by the preponderance of the evidence.  Burdine, 450 U.S. at 252-53, 101 S. Ct. at 1093.  To establish a *prima facie* case of discrimination, plaintiff must show: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of

discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000); see also McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824.

Defendants assert that plaintiff cannot satisfy the third and fourth elements of a prima facie case of discrimination. An adverse employment action is defined as "a materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).[4] To constitute a materially adverse change in employment conditions, such change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (citing Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). Sufficiently adverse changes include, but are not limited to, termination of employment, demotions resulting in a decrease in salary or less distinguished title, a material loss of benefits, or a substantial reduction in material responsibilities. Galabya, 202 F.3d at 640 (citing Crady, 993 F.2d at 136). Although a plaintiff's "subjective preference, alone, is an insufficient basis for finding an adverse employment action," Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1239 (11th Cir. 2001), an adverse employment action will be considered material if it is "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997).

Any alleged discriminatory conduct occurring after September 19, 1999, may be considered in the context of plaintiff's Title VII discrimination claim. Plaintiff alleges she was transferred to the Crime Prevention Unit of the Community Relations Division on January 26,

---

[4] Although an Age Discrimination in Employment Act ("ADEA") case, Galabya notes that Title VII claims and ADEA claims are analyzed under the same legal standard and that relevant sections of the two statutes contain identical language. Galabya, 202 F.3d at 640 n.2 (citing Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998)).

2000, and, unlike male sergeants assigned to the same unit, was ordered to wear a police uniform while performing her duties.  Additionally, plaintiff also alleges a male sergeant was thereafter transferred to the front desk sergeant position–a position within the SPD for which plaintiff had requested assignment in December of 1999.  Although defendants deny such allegations in their answer, defendant SPD Chief John Falge admits in his affidavit that a male sergeant was transferred to the front desk sergeant assignment and that plaintiff had put in a transfer request for the same assignment. Falge Aff., ¶ 5.  Plaintiff additionally alleges she was discriminated against on account of her gender because for two months she was the only officer of her rank and experience within her division who was not provided a department issued take-home vehicle.  Further, plaintiff submits she was removed from the Marine Patrol Unit on June 9, 2000 but that some of her male counterparts were not removed.  Defendants admit the June 9, 2000 transfer of plaintiff from the Marine Patrol Unit, but defendants offer non-discriminatory explanations for such transfer and the other actions relating to plaintiff's employment.  Such explanations are irrelevant at this stage of analysis, however, for the determination of whether plaintiff has established a prima facie case of discrimination.

Plaintiff has only a minimal burden of establishing a *prima facie* case of gender discrimination under Title VII. Mandell, 316 F.3d at 378 (citing Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000)).  Although it is a close question whether the requirement that plaintiff wear a police uniform would be sufficient by itself, the actions of which plaintiff complains taken in their entirety resulted in a substantial alteration of her employment responsibilities as she was transferred to an entirely different division of the SPD.  Plaintiff testified at her deposition as to the reduction in responsibilities and benefits she experienced

as a result of her transfer to the Community Relations Division. Specifically, she explains her responsibilities consisted of knocking on residents' front doors and distributing pamphlets to people to instruct them in crime prevention methods. Defs'. Ex. D, Pl's. Dep., 98. Plaintiff adds that she was also asked to conduct follow-ups to reported burglaries and was required to wear a uniform. Id. Plaintiff discusses the subsequent lack of overtime assignments within the division. Id. at 98-101. Plaintiff's deposition testimony is more than a conclusory statement as it is grounded in factual assertions based upon her personal knowledge of her working conditions and thus serves as sufficient evidence for a jury to conclude that a reasonable employee in plaintiff's position could have felt her employment conditions were changed for the worse, particularly in light of defendants' failure to dispute plaintiff's description of her employment responsibilities. Accordingly, the proffered employment actions were sufficiently adverse for plaintiff to satisfy the third prong of establishing a *prima facie* case of gender discrimination.

Likewise, plaintiff is able to satisfy the minimal burden of presenting factual circumstances giving rise to an inference of gender discrimination. Plaintiff essentially argues that the above transfers and uniform requirements constitute disparate treatment as a result of her gender. Putting aside defendants' non-discriminatory explanations for their employment actions, the assignment of a male sergeant of equal rank to a position for which plaintiff requested gives rise to the inference of gender discrimination. See Mandell, 316 F.3d at 379 (holding a showing of disparate treatment raises a sufficient inference of discrimination in the context of establishing a *prima facie* case). Although plaintiff "must show that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself" in order to establish disparate treatment, Graham v. Long Island

R.R., 230 F. 3d 34, 39 (2d Cir. 2000), "the question whether two employees are similarly situated is a question of fact for the jury." Mandell, 316 F.3d at 39.  Sufficient evidence exists for a fact finder to conclude that other officers who were not subject to the same transfers or requirements as plaintiff and the male officer who received the assignment plaintiff requested were similarly situated to plaintiff in order to support an inference of discrimination. Therefore, plaintiff has established a *prima facie* case of gender discrimination and has satisfied the minimal requirement under the first prong of the McDonnell Douglas burden shifting analysis.

### b.  Legitimate, Non-discriminatory Reasons

The establishment of a *prima facie* case creates a presumption of employment discrimination. Tex. Dep't of Cmty. Affairs, 450 U.S. at 254, 101 S. Ct. at 1094.  The burden then shifts to the defendant-employer to present admissible evidence of legitimate, non-discriminatory reasons for the adverse employment actions taken with respect to the plaintiff. Id.

In response to plaintiff's allegation that she was transferred to the Crime Prevention Unit of the Community Relations Division as a result of her gender, defendants offer evidence of an arbitration agreement between the City of Syracuse and plaintiff as a legitimate, non-discriminatory reason for her transfer.  Plaintiff goes as far as to admit in her deposition testimony that she was transferred to that position as a result of an agreement between her and the City of Syracuse resolving the grievances she had previously filed. Pl's. Dep., 96.  Defendants contend the transfer was a result of negotiations between the City of Syracuse and plaintiff rather than some discriminatory motive.  Evidently, defendants have

proffered a legitimate, non-discriminatory reason for plaintiff's transfer to the Community Relations Division.

With respect to plaintiff being ordered to wear a uniform upon the transfer to her new position, defendants contend that wearing a uniform is pertinent to the responsibilities of officers within the Crime Prevention Unit of the Community Relations Division. Defendants explain that officers within the Crime Prevention Unit often visit victims of crimes in their homes and ask citizens if they require any assistance from the SPD. Because these officers must often approach citizens' front doors and enter private homes, defendants explain that a police uniform is necessary to thwart the suspicion that the approaching officer is someone impersonating a police officer in an effort to commit a burglary. Defendants indicate that a number of officers have reported being denied access to crime victims' homes until their uniforms may be clearly viewed. Defendants also explain that all officers within plaintiff's unit, including the unit's three male officers, are required to wear a uniform. Further, officers of higher rank than plaintiff are frequently required to wear a uniform when interacting with members of the community. For example, Police Chief John Falge wore his uniform to community meetings in order to foster trust in police officers and to encourage citizens to seeks the assistance of the SPD when necessary. The particular duties of the Crime Prevention Unit, coupled with the fact that male officers within the unit are also required to wear a uniform, supports the legitimacy of defendants' non-discriminatory reason for ordering plaintiff to wear a uniform.

In response to plaintiff's allegation that she was denied her request for the front desk sergeant position on account of her gender, defendants reference the criteria within the Police Union's contract for the approval of officers' transfer requests. This criteria includes

seniority, experience, education, training, evaluations, health, skills, unique qualifications, and individual requests.  Rather than make a decision based upon the candidates' genders, defendants contend that the male sergeant appointed to the position was more qualified than plaintiff.  In particular, defendants cite the experience criterion within the Police Union contract as the primary basis for their decision.  Defendants explain the male sergeant selected had prior experience working at the very same position but on a different shift.  Accordingly, defendants have proffered a legitimate, non-discriminatory reason for selecting the male sergeant rather than approving plaintiff's transfer request because the male sergeant was of equal rank and had more experience at the position than plaintiff.

Defendants offer a different explanation for why plaintiff was not provided with a take-home police vehicle for a two month period.  Defendants again reference the arbitration agreement between the City of Syracuse and plaintiff in which plaintiff's grievance was resolved.  Pursuant to the arbitration agreement, plaintiff was to be provided with a take-home vehicle if all other sergeants within her division were also provided with vehicles.  Because plaintiff was the only sergeant within her division, defendants contend they were not required to provide plaintiff with a take-home vehicle.  In recognition of the fact that plaintiff could still be discriminated against despite defendants' compliance with the arbitration agreement, defendants also submit that plaintiff was not provided a take-home vehicle because no such vehicles were available.  Defendant Chief Falge states he determined a take-home vehicle was not critical for plaintiff to perform her duties.  Defendants explain that plaintiff was provided a take-home vehicle two months after her transfer when a vehicle became available in March of 2000.  Defendants' determination that a take-home vehicle was not necessary for plaintiff to perform her duties, coupled with the unavailability of

vehicles within the SPD, constitute a legitimate, non-discriminatory reason for the decision

not to provide plaintiff with a take-home vehicle for a two month period following her transfer

to the Crime Prevention Unit.

Defendants also offer a legitimate, non-discriminatory reason for the removal of

plaintiff from the Marine Patrol Unit.  Following the review of an accident involving the Marine

Patrol Unit's vessel, the SPD implemented new requirements for officers working in the

Marine Patrol Unit, including mandatory certification of all unit members in American Red

Cross lifesaving techniques.  Plaintiff is among several officers, some of which are men, who

were removed from the Marine Patrol Unit because they did not have an American Red

Cross lifesaving certification.  Plaintiff remains eligible to be reinstated to the Marine Patrol

Unit upon her being certified in American Red Cross lifesaving techniques, but plaintiff has

declined to obtain such a certification.  As a result of the SPD's new requirements,

defendants have proffered a legitimate, non-discriminatory reason for plaintiff's removal from

the Marine Patrol Unit.

To summarize, defendants have proffered legitimate, non-discriminatory reasons

for each of plaintiff's allegations of gender discrimination.  Consequently, defendants have

satisfied the second prong of the McDonnell Douglas burden shifting analysis and the onus

returns to plaintiff.

### c.  Establishing Pretext

Once a Title VII defendant offers sufficient evidence of legitimate, non-

discriminatory reasons for the adverse employment actions, the burden of production shifts

back to the plaintiff to show, by a preponderance of the evidence, that the defendants'

proffered reasons are nothing more than pretext for unlawful discrimination. McDonnell

Douglas, 411 at 802, 93 S. Ct. at 1824.  The plaintiff's burden at the third stage of the

McDonnell Douglas analysis is substantially higher than the burden at the first stage. Meiri v.

Dacon, 759 F.2d 989, 996 n.10 (2d Cir. 1985) (recognizing the "*de minimis*" nature of a

plaintiff's burden of proof at the first stage of the McDonnell Douglas analysis).  A Title VII

plaintiff may successfully establish pretext "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs, 450

U.S. at 256, 101 S. Ct. at 1095.  Upon reaching the third stage of the burden shifting

analysis, summary judgment will be warranted unless the plaintiff provides  "adequate

evidence to support a rational finding that the legitimate non-discriminatory reasons proffered

by the employer were false, and that more likely than not the employee's sex or race was the

real reason for the discharge." Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (quoting Viola

v. Philips Med. Sys. of N. Am., 42 F.3d 712, 717 (2d Cir. 1994)).  Perhaps most importantly,

the Title VII plaintiff must offer concrete particulars of fact rather than "conclusory allegations

of discrimination" in order to overcome a motion for summary judgment. Meiri, 759 F.2d at

998.

          In response to defendants' non-discriminatory reasons for the adverse employment

actions, plaintiff offers the report and deposition testimony of her police procedures expert,

W. Ken Katsaris, as evidence of pretext.  Of the fifteen opinions stated in Mr. Katsaris's

report and later discussed in his deposition, none of the opinions specifically address the

adverse employment actions of which plaintiff alleges she was discriminated against, namely,

plaintiff's transfer to the Crime Prevention Unit, the requirement that plaintiff wear a police

uniform while on duty, the denial of plaintiff's request for the front desk sergeant position, the

decision not to provide plaintiff with a take-home vehicle for a two month period, and the removal of plaintiff from the Marine Patrol Unit.  Instead, most of Mr. Katsaris's opinions concern plaintiff's allegations of retaliation as a result of her complaint of gender discrimination filed with the EEOC.  Only two of Mr. Katsaris's opinions address the assignment of female officers in the most general of terms.  In opinion number 10, Mr. Katsaris states that a review of the SPD's internal hierarchy for January of 2000 shows an unequal delegation of supervisory authority between male and female officers. Pl's. Ex. Q, Katsaris Aff., 5.  Mr. Katsaris states in opinion number eleven that "sexually discriminatory assignments and transfers have resulted in perpetuation of sexual stereotypes" because candidates' experience is a factor for making assignment determinations. Id.

Even viewing all facts, inferences, and ambiguities in the light most favorable to the non-moving party, i.e., the plaintiff, the evidence offered by plaintiff is wholly inadequate to persuade the court that defendants were more likely motivated by a discriminatory reason or that the proffered legitimate, non-discriminatory reasons are not worthy of belief.  Nowhere in Mr. Katsaris's report is there any analysis of the adverse employment actions taken by defendants *with respect to plaintiff*.  For example, Mr. Katsaris fails to compare the qualifications of plaintiff and the male sergeant selected for the front desk position plaintiff requested.  Rather than involve plaintiff directly, Mr. Katsaris's opinions concerning plaintiff's allegations of discrimination (as opposed to his opinions concerning allegations of retaliation) constitute blanket assertions of systemic discrimination throughout the SPD.  More than blanket assertions are needed to establish pretext, however. See Murphy v. Bd. of Educ. of the Rochester City Sch. Dist., 273 F. Supp. 2d 292, 302 (W.D.N.Y. 2003) (holding plaintiff did not meet his burden to establish pretext because he did not relate his allegations of systemic

racial discrimination to any specific action taken against him).  Outside of her expert's

opinions, plaintiff's evidence of discrimination amounts to little more than conclusory

statements made by her or her attorney.  Therefore, plaintiff has not established pretext and

defendants' motion for summary judgment as to plaintiff's discrimination claims will be

granted.

### 4.  Retaliation Claims Under Title VII

Plaintiff's retaliation claim under Title VII is subject to the same burden shifting

analysis established in McDonnell Douglas. Amin v. Akzo Nobel Chemicals, Inc., 282 F.

App'x 958, 961 (2d Cir. 2008); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d

Cir. 2001).

### a.  A *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation under Title VII, plaintiff must show (1)

that she was engaged in protected activity; (2) that the employer was aware of that activity;

(3) that plaintiff was thereafter subjected to an adverse employment decision; and (4) that

there was a causal connection between plaintiff's protected activity and the adverse action.

Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (quoting Manoharan

v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)).

Notably, since the filing of plaintiff's lawsuit, the Supreme Court has expanded the scope of

conduct constituting an "adverse action" in relation to a Title VII retaliation claim. Burlington

Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 66, 126 S. Ct. 2405, 2414 (2006).  The

anti-retaliation provision within Title VII is no longer limited to employment-related acts of

retaliation and can include harm occurring outside the workplace. Id. at 63-64, 126 S. Ct. at

2412 (citing Rochron v. Gonzales, 438 F.3d 1211, 1213 (D.C. Cir. 2006) (holding FBI's failure

to investigate death threats made against an FBI agent and his wife was actionable retaliation under Title VII); Berry v. Stevinson Chevrolet, 74 F.3d 980, 984, 986 (10th Cir. 1996) (determining employer's filing of false criminal charges against employee who complained of discrimination was sufficient act of retaliation)).

Defendants contend plaintiff cannot satisfy the third and fourth prongs of establishing a *prima facie* case of retaliation.  As a result of the Burlington Northern decision, defendants concede that two of the employment actions of which plaintiff complains–her November 2, 2000, suspension and the reading of Miranda warnings–constitute adverse employment actions.  Nevertheless, defendants maintain plaintiff cannot establish a causal connection between the filing of her complaint and the two admittedly adverse employment actions, and therefore argue that plaintiff cannot establish a *prima facie* of retaliation with respect to those actions. Further, defendants argue that the remainder of plaintiff's complaints of retaliation do not rise to the level of adverse employment actions notwithstanding the Supreme Court's decision in Burlington Northern.

A plaintiff satisfies the third prong of establishing a *prima facie* case of retaliation if she can show that a reasonable employee would have found the employer's conduct materially adverse as to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68, 126 S. Ct. at 2415 (internal quotations omitted).  An action will be considered material if it is "'likely to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." Id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S. Ct. 843, 848 (1997)).  The Court explained that the employer's conduct must be examined through the lens of the

"reasonable" employee because an objective standard can avoid the difficulties of determining "a plaintiff's unusual subjective feelings." Id. at 68-69, 126 S. Ct. at 2415.

For the reasons discussed above, plaintiff's allegations of retaliation are subject to the same statute of limitations as her discrimination claims. Accordingly, any alleged retaliatory action occurring after September 19, 1999, may be considered in the context of plaintiff's Title VII retaliation claim. Plaintiff's allegations of unlawful retaliation are as follows: (1) on July 14, 2000, approximately two weeks after she filed her EEOC complaint, defendant Boyle retaliated against her by way of barring her from the ABC Office and requiring her to file an internal memo should she seek further information from the ABC Office; (2) during an arbitration proceeding on September 20, 2000, the attorney for the SPD stated to plaintiff's arbitration attorney, Patrick MacRae, that the SPD would "forego criminal and administrative charges" against plaintiff in exchange for her agreement to drop her EEOC complaint; (3) on November 3, 2000, defendants filed administrative charges against plaintiff for using a photocopier for personal use, suspended plaintiff for ten business days without pay, and asked the Onondaga County District Attorney's Office to seek criminal charges against plaintiff; (4) defendants immediately thereafter retaliated against plaintiff by contacting newspapers and commenting on her suspension, including the allegation that plaintiff had seized and made photocopies of other officers' paychecks rather than their pay stubs; (5) defendant Kerwin retaliated against plaintiff by reciting Miranda warnings to plaintiff over the phone following plaintiff's report of a minor work-related injury; (6) on November 28, 2000, defendant Rathbun retaliated against plaintiff by refusing to schedule her for an overtime assignment she requested and stating to her that her work conditions would improve if she met with defendant Falge and agreed to withdraw her EEOC complaint; (7)

plaintiff received sub-par performance evaluations only after, and as a result of, filing her EEOC complaint.

Plaintiff's allegations of retaliation are sufficiently material to constitute adverse actions under the expanded Burlington Northern standard. Putting aside temporarily any legitimate, non-retaliatory reasons for defendants' conduct, plaintiff has been charged administratively for misconduct which frequently goes unpunished; barred from areas within the SPD which other officers frequently enter; threatened with criminal charges; received sub-par evaluations; and received offers of better treatment in exchange for the voluntary discontinuation of her complaint, all of which only occurred after she complained of gender discrimination. Any of these actions in isolation could dissuade a reasonable employee from approaching her employer, the EEOC, or the courts with a complaint of discrimination. Taken together, the discouraging effect of the alleged acts is compounded and easily meets the standard for materiality delineated in Burlington Northern. Defendants fail to present a *substantive* argument to the contrary in both their initial and supplemental memorandums of law in support of the instant motion and go as far as to concede the issue of materiality in regard to plaintiff's ten day suspension and the reading of Miranda warnings.[5] As a result, the alleged retaliatory acts constitute "adverse employment actions" for the purposes of establishing plaintiff's *prima facie* case.

The fourth prong of a *prima facie* case of retaliation can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory

---

[5] The entirety of defendants' argument that plaintiff's remaining allegations of retaliation do not constitute adverse employment actions is: "None of her other complaints can be considered adverse so they will not be individually discussed." Defs'. Mem. Summ. J., 4.

treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000). Defendants argue plaintiff cannot satisfy the fourth prong of a *prima facie* case of retaliation with respect to her November 2, 2000, suspension and the reading of <u>Miranda</u> warnings to plaintiff after she filed an injury report. Defendants premise their argument upon case law holding that temporal proximity alone cannot be sufficient evidence of causality to establish a *prima facie* case unless the temporal relationship between the complaint of discrimination and the adverse employment action is "very close." <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 1511 (2001). In short, defendants argue that too much time elapsed between plaintiff's suspension and the reading of <u>Miranda</u> warnings–both of which occurred in early November of 2000–and plaintiff's EEOC complaint which was initially filed on July 3, 2000, and later supplemented on August 24, 2000.

Temporal proximity is only one of several methods for demonstrating the requisite causal link between an adverse employment action and a charge of unlawful retaliation, however. <u>See</u> <u>Gordon</u>, 232 F.3d at 117. First, it deserves mention that the case to which defendants cite, <u>Clark County Sch. Dist. v. Breeden</u>, involved an adverse employment action taken 20 months after the plaintiff made a charge of discrimination, whereas the plaintiff in this case made a complaint of discrimination within approximately five months of the two adverse actions defendant challenges on grounds of causation. Second, the suspension and <u>Miranda</u> warnings were only two of several alleged incidents of retaliation, the first of which occurred less than two weeks after plaintiff filed her EEOC complaint. Third, and perhaps

most importantly, plaintiff does not solely rely on a "mere temporal proximity" to establish causation. See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (holding that a three month period between plaintiff's protected activity and her termination did not entirely destroy any causal connection, but such a time period, "*standing alone*, does not establish a causal connection") (emphasis added). Plaintiff has submitted additional evidence in the form of her expert's opinion giving rise to the inference of disparate treatment and a retaliatory animus because other officers were not treated the same way after engaging in similar or more serious conduct than did plaintiff.

With respect to the Miranda warnings specifically, defendants contend no causal relationship exists because the officer who read plaintiff the warnings was not aware of her pending grievances or discrimination claims until he was served with her complaint in 2001. Even if a jury were to believe defendant Kerwin's testimony that he was not aware of plaintiff's complaints of discrimination when he read her Miranda warnings, a jury could still find the necessary causal connection between the charge of discrimination and the adverse employment action. See Gordon, 232 F.3d at 117. Although "the lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection," id. (emphasis in original), a jury may nonetheless "find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities . . . so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge." Id. Defendant Kerwin's assertion that he was not aware of plaintiff's complaint of discrimination does not shut-off the causal relationship between the protected activity and adverse employment action because it is undisputed that the SPD was aware of plaintiff's

complaint by November of 2000.  Furthermore, the evidence regarding the chain of

command within the SPD and the close working relationship between defendants Kerwin and

Falge could allow a reasonable jury to find circumstances showing defendant Kerwin was

either indeed aware of plaintiff's complaints of discrimination or that he was acting under the

command of defendant Falge who had the requisite knowledge of plaintiff's complaint as

evidenced by his affidavit and his testimony given at the September 2000 arbitration hearing.

Therefore, plaintiff has established the necessary causal relationship between her protected

activity and the adverse employment actions.  As a result, plaintiff has established her *prima

facie* case of retaliation.

### b.  Legitimate, Non-Retaliatory Reasons

Like the burden-shifting analysis for discrimination claims under Title VII, once a

plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to

proffer legitimate, non-retaliatory reasons for the adverse employment actions taken. Amin,

282 F. App'x at 962.

With respect to the decision to bar plaintiff from the ABC Office and require her to

file internal memoranda should she seek additional information from the office, defendants

contend this action was in response to plaintiff's copying of three police sergeants' pay stubs

without the sergeants' permission.  Plaintiff admits copying the sergeants' pay stubs and

nowhere does plaintiff assert she had permission to do so.  Defendants explain that the three

sergeants complained about violations of their privacy and that the SPD was compelled to

take action regarding plaintiff's conduct.  Further, there is testimony offered by Martha

Thompson, an ABC Office employee, indicating that it was consistent with SPD policy to

require officers to submit in writing requests for confidential information about other officers.

Therefore, defendants have proffered a legitimate, non-retaliatory reason for banning plaintiff from the ABC Office and requiring her to submit requests for additional information pertaining to other officers in writing.

Defendants flatly deny plaintiff's allegation that their legal counsel stated the SPD would forego bringing administrative charges against plaintiff if plaintiff agreed to discontinue her EEOC complaint.  Defendants contend even if the statement was made, that it was made for the purposes of negotiating a resolution with plaintiff rather than to retaliate against her for her complaints of discrimination.  In light of the frequent negotiating that occurs between counsel in an effort to amicably resolve a dispute, defendants have proffered a legitimate, non-retaliatory reason for their attorney having made the alleged statements to plaintiff's counsel during arbitration.

In response to plaintiff's allegation that she was retaliated against by way of administrative charges being filed against her, her ten-day suspension, and the SPD's request that criminal charges be pursued, defendants offer a legitimate, non-retaliatory reason for their actions.  First, defendants' expert, Frank Sardino, explains it is a violation of SPD policy to copy another officer's pay stub information for personal use.  Mr. Sardino references an order disseminated by former SPD Deputy Chief Timothy Cowin stating that no paycheck could be removed from the ABC Office without first signing out for the given documents.  Defendants contend that plaintiff's violation of SPD policy, rather than any alleged retaliatory animus, was the reason administrative charges were filed and she received a ten-day suspension.  Further, in regard to the pursuit of criminal charges, defendants explain that the officers whose pay stubs were photocopied by plaintiff requested she be prosecuted.  These officers have stated that they felt their privacy was violated and

that they asked the SPD to pursue criminal action against plaintiff.  Defendants also direct the court's attention to the fact that plaintiff's own counsel advised her to assert her Fifth Amendment right against self-incrimination when she was questioned during arbitration as to how she obtained the officers' pay stubs and that plaintiff ultimately followed her counsel's advice after a short attorney-client conference.  For all of these reasons, defendants have satisfied their burden of establishing a legitimate, non-retaliatory motivation for suspending plaintiff and asking the Onondaga County District Attorney's Office to pursue criminal charges.

With respect to the allegation that defendants retaliated against plaintiff by making statements to newspaper reporters, defendants fail to offer a specific, non-retaliatory reason for making such comments.  Despite plaintiff's allegation of retaliation and the newspaper articles attached as exhibits, defendants do not address the comments made by defendants Guy or Bernardi and neglect to direct the Court's attention to any proffered reason for why the comments were made.  Defendants merely offer a general denial of plaintiff's allegations as to the comments made to the media. See Defs'. Answer, ¶ 44.  Accordingly, defendants have not satisfied their burden under the McDonnell Douglas analysis and plaintiff need not establish pretext as to her claim of retaliation stemming from the comments made to the newspaper.

In response to plaintiff's allegation that defendant Kerwin retaliated against her when he read her Miranda warnings over the phone, defendants reference the Police Union contract as evidence that a police officer must receive proper Miranda warnings if she is a target or suspect in a criminal investigation or could be arrested.  Additionally, defendants correctly explain that it is a crime to falsely report a work-related injury.  Defendant Kerwin's

deposition testimony offers evidence that he conducted an investigation of plaintiff's filing of an injury alleged to have occurred while on duty and afterwards concluded plaintiff may have committed a crime by falsely filing an injury report.  Defendant Kerwin stated that he attempted to read plaintiff Miranda warnings so that she was aware of her constitutional rights rather than out of some retaliatory motive.  Therefore, defendants have proffered a legitimate, non-retaliatory reason for reading plaintiff Miranda warnings.

Defendants also satisfy their McDonnell Douglas burden with regard to plaintiff's allegation that she was retaliated against by not receiving an overtime assignment. Defendants explain that the assignment plaintiff requested was at a non-government facility, the Carousel Mall.  Because the Carousel Mall pays the City of Syracuse for police officers' overtime assignments, the Mall's security director may make requests for which officers are selected to work at the facility.  Defendants proffer that Tim Erwin, the security director for the Carousel Mall, requested that the same officers be assigned to the mall detail on a rotating basis in an effort to maximize the personnel's familiarity with the local criminal element.  Additionally, internal records showing plaintiff received more overtime assignments than most other sergeants bolsters defendants' claim that plaintiff did not receive the Carousel Mall overtime assignment for a legitimate, non-retaliatory reason.  Therefore, defendants have satisfied their burden with respect to plaintiff's claim of retaliation as a result of not receiving an overtime assignment and plaintiff must show the proffered reason is merely pretext for unlawful retaliation.

Finally, defendants offer adequate evidence of a legitimate, non-retaliatory reason with respect to plaintiff's allegation that she received sub-par performance evaluations and was subject to internal investigations as a result of her complaints of discrimination.

Specifically, defendant Rathbun stated that plaintiff was missing from her assignment for several hours when she was needed to work a detail. Defendant Rathbun conducted an investigation of plaintiff's whereabouts and reports from other officers indicated plaintiff lied to her supervising officer about her location and had abandoned her assignment while on duty. Defendant Rathbun issued a report criticizing plaintiff for her actions and reflecting poorly on plaintiff's judgment skills, but did not take formal disciplinary action against plaintiff. Defendants proffer that plaintiff's violation of SPD policy, rather than any alleged retaliatory motive, was the reason for defendant Rathbun's report and any subsequent negative performance evaluation. Therefore, defendants have satisfied their burden with respect to this incident and plaintiff must establish that the proffered reason is pretext.

### c. Establishing Pretext

After a defendant has met its burden of articulating a legitimate, non-retaliatory reason for an adverse employment action, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). Defendants have proffered legitimate, non-retaliatory reasons for all of the alleged acts of retaliation except for the alleged comments to newspaper reporters about the details surrounding plaintiff's grievances and her suspension. Consequently, plaintiff is required to establish pretext for all of her allegations of retaliation with exception to the alleged comments made to newspaper reporters. To establish pretext, plaintiff must produce sufficient evidence to cast doubt onto defendants' proffered reasons, "and that more likely than not retaliation for complaints of discrimination was the real reason" for the adverse employment actions. Johnson v. Nicholson, No. 05-CV-2740 (JMA), 2007 WL 1395546, at 8

(E.D.N.Y. May 11, 2007) (internal citations omitted).  Plaintiff is not required to disprove

defendants' proffered reasons altogether, however. See Fields v. New York State Office of

Mental Retardation and Developmental Disabilities, 115 F.3d 116, 120-21 (2d Cir. 1997).

Instead, a Title VII plaintiff may satisfy the third step of the McDonnell Douglas burden

shifting analysis "by proving that an impermissible factor was a motivating factor, without

proving that the employer's proffered explanation was not some part of the employer's

motivation. Id. at 120; see also Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)

("[P]laintiff is not required to show that the employer's proffered reasons were false or played

no role in the employment decision, but only that they were not the only reasons and that the

prohibited factor was at least one of the 'motivating factors.'").  Plaintiff may therefore prevail

so long as she provides evidence that retaliation was "*a* substantial motivating reason for the

adverse employment actions," and she is not required to show retaliation was the only

motivating factor. Fields at 121 (emphasis in original).  Notwithstanding this standard, if a

plaintiff's "allegations are conclusory and unsupported by evidence of any weight[,] they are

insufficient to satisfy the requirements under Rule 56(e). Smith v. Am. Exp. Co., 853 F.2d

151, 155 (2d Cir. 1988) (citing Meiri, 759 F.2d at 998).

Although defendants cite concern for officers' privacy as a lawful reason for

banning plaintiff rom the ABC Office, plaintiff has produced sufficient evidence for a

reasonable factfinder to question defendant Boyle's motive and conclude that defendant

Boyle sought to retaliate against plaintiff.  To begin with, there are inconsistencies between

Ms. Thompson's affidavit and her testimony, namely, whether plaintiff was permitted the

same access to the ABC Office as other officers following her complaints of discrimination.

Ms. Thompson goes as far as to admit in her deposition that after defendant Boyle's order,

plaintiff would stand at the threshold of the office to receive her check from an employee whereas other officers would enter and leave the office to retrieve their checks themselves. Ms. Thompson only speculates that defendant Boyle was not serious when he ordered her to "throw [plaintiff] the heck out" should plaintiff enter the ABC Office again, but Ms. Thompson nonetheless later admits in her testimony that defendant Boyle appeared angry when giving this directive. Additionally, plaintiff's expert opines that defendant Boyle did not conform to acceptable standards of police supervision when he gave this command, thereby giving rise to the inference of unlawful retaliation. For all of these reasons, plaintiff has satisfied her burden of establishing pretext because a reasonable jury could conclude that defendants' proffered reason was more likely than not retaliatory animus rather than any concern for officers' privacy.

Plaintiff also offers sufficient evidence of pretext in regard to defendants' reason for offering to forego criminal and administrative charges against plaintiff if she dropped her EEOC complaint. Although defendants contend their attorney's statement was an effort to negotiate an amicable resolution of plaintiff's grievances, a reasonable factfinder could conclude the statement was made in an effort to dissuade plaintiff from continuing with her complaints of discrimination, thereby constituting unlawful retaliation under the expanded Burlington Northern standard. Plaintiff has submitted evidence in the form an affidavit from her arbitration attorney, Patrick MacRae, in which Mr. MacRae describes the content of the statement from defendants' counsel and the circumstances under which the statement was made. Mr. MacRae notes that the statement was made on September 20, 2000, and in the presence of defendants Falge and Boyle. Mr. MacRae also states that defendants' counsel promised the SPD would not bring future charges against plaintiff in exchange for plaintiff's

discontinuation of her grievances and complaint.  Given the temporal proximity to plaintiff's

EEOC complaint and the other surrounding circumstances, a reasonable factfinder could

determine that the statement allegedly made by defendants' attorney was an implicit threat

that the SPD would bring charges against plaintiff if she continued with her complaints of

discrimination.  Therefore, plaintiff has satisfied her burden of establishing pretext with

respect to defendants' proffered reason for offering to forego criminal and administrative

charges.

Plaintiff's evidence of pretext in regard to defendants' reason for suspending

plaintiff for ten days and pursuing criminal charges against her comes in large part from

plaintiff's expert, W. Ken Katsaris.  Following a review of Internal Affairs Division files for the

SPD, Mr. Katsaris concluded that other officers were disciplined less severely than plaintiff

when accused of violations during the same time period.  In response to a request during his

deposition, Mr. Katsaris filed a supplemental expert witness disclosure identifying a number

of Internal Affairs investigation files, which in his opinion, serve as examples of other officers

receiving less severe punishment for more egregious acts and thereby demonstrating

evidence of unlawful retaliation against plaintiff.  Mr. Katsaris goes on to explain that the pay

stubs photocopied by plaintiff were routinely left in a common area accessible by all

members and civilians within the SPD and that such information was common knowledge by

virtue of the routine course of business.  Plaintiff also offers as an exhibit deposition

testimony from Officer Ciereck in which the officer stated he is aware that other SPD officers

have on occasion used the SPD's photocopier for personal reasons but that he is unaware of

anyone other than plaintiff having been disciplined for such conduct.  Such evidence calls

into question defendants' proffered reason for suspending plaintiff and seeking criminal

charges against her and is sufficient evidence for a reasonable factfinder to conclude that unlawful retaliation was more likely a substantial motivating factor for plaintiff's suspension than defendants' proffered reason. Therefore, plaintiff has satisfied the third prong of the McDonnell Douglas burden shifting analysis with respect to her suspension.

Plaintiff's evidence of pretext as to the defendants' stated reason for issuing Miranda warnings to plaintiff also comes in the form of Mr. Katsaris's opinion. Mr. Katsaris opines that defendant Kerwin's attempt to Mirandize plaintiff after she reported a work-related injury falls outside the acceptable standard of care and normal protocol for police officers. Mr. Katsaris also concludes that, when viewed with the SPD's previous threat of criminal charges during the September 20, 2000, arbitration proceeding, defendant Kerwin's adverse employment actions approximately 1 ½ months later were intended as retaliation for plaintiff's complaints of discrimination and to intimidate plaintiff into discontinuing her complaint with the EEOC. A jury may believe Mr. Katsaris's opinion in light of his extensive law enforcement background and his review of the relevant deposition testimony, affidavits, Internal Affairs investigation files, and other pertinent information stated in his report. Therefore, plaintiff has produced sufficient evidence for a jury to conclude that retaliation was more likely defendants' motivation for reading plaintiff Miranda warnings than was defendants' proffered reason.

Plaintiff wholly fails to establish that defendants' proffered reason for denying plaintiff's overtime request is pretext for unlawful retaliation. Nowhere does plaintiff's expert address the SPD's procedures for scheduling officers for overtime assignments. The closest plaintiff comes to offering evidence of pretext as to defendants' explanation is Mr. Katsaris's opinions regarding the *investigation* of plaintiff's complaint of discrimination in overtime

assignments.  This opinion says nothing of the defendants' decision not to grant plaintiff's

overtime request, however.  Rather, Mr. Katsaris's opinion is limited to the investigatory

procedures used by the SPD in response to plaintiff's complaints of unequal overtime rather

than her request for the specific assignment of overtime.  Plaintiff thus relies on the

conclusory statements within her complaint and deposition testimony as evidence that

defendant Rathbun's decision to deny her overtime request was motivated by unlawful

retaliation.  Such an evidentiary basis is insufficient to overcome a motion for summary

judgment pursuant, and therefore, plaintiff's claim of retaliation stemming from the November

28, 2000, denial of her overtime request will be dismissed because plaintiff has not satisfied

her burden to establish pretext.

        Finally, with respect to plaintiff's sub-par evaluations and the report filed by

defendant Rathbun, plaintiff submits evidence of her satisfactory evaluations prior to her

complaint of discrimination as a basis for concluding that defendants' unlawfully retaliated

against her.  As conceded by her own expert, the crux of plaintiff's argument for pretext in

relation to defendants' proffered legitimate, non-retaliatory reasons for criticizing plaintiff's

conduct is the fact that plaintiff was not evaluated poorly or reported for misconduct until after

she filed her complaint.  Mr. Katsaris states his conclusion that defendant Rathbun's report of

plaintiff's misconduct did not adhere to the customary procedure for conducting internal

investigations of police officers, but Mr. Katsaris fails to identify how defendant Rathbun's

report deviated from customary procedures or how, if at all, such alleged deviation was

motivated by unlawful retaliation.  Additionally, plaintiff offers no evidence contradicting the

strong factual determinations set forth by defendants for concluding that plaintiff had indeed

violated SPD policy when she went missing for several hours while on duty and apparently

lied to her supervisor about her location.  Defendants also explain that no formal disciplinary

action was taken with respect to plaintiff; she was only reprimanded and a report was filed.

The decision to forego a formal punishment cuts against the notion that defendants'

proffered reason for criticizing plaintiff's conduct is nothing more than pretext for unlawful

discrimination.  In light of plaintiff's failure to provide more of an evidentiary basis for calling

into question defendants' legitimate, non-retaliatory reason for their evaluation of plaintiff's

conduct, a reasonable factfinder could not determine unlawful retaliation was more likely a

substantial motivating factor than plaintiff's actual misconduct.  Therefore, plaintiff has not

satisfied her burden to establish pretext and her claim of retaliation concerning her sub-par

evaluations and defendant Rathbun's report will be dismissed.

### 5. **Hostile Work Environment Claims Under Title VII**

A plaintiff presents an actionable claim of a hostile work environment under Title VII

"when the work place is permeated with 'discriminatory intimidation, ridicule, and insult,' that

is 'sufficiently severe or pervasive to alter the conditions of the victims's employment and

create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.

Ct. 367, 370 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67, 106 S.

Ct. 2399, 2405 (1986)).  Hostile work environment claims under Title VII have both an

objective and a subjective consideration. See Harris, 510 U.S. at 21-22, 114 S. Ct. at 370.  If

the conduct complained of is not so severe as to create an environment that a reasonable

person would find hostile or abusive, the plaintiff does not have an actionable claim. Id.  At

the same time, "if the victim does not subjectively perceive the environment to be abusive,

the conduct has not actually altered the conditions of the victim's employment, and there is

no Title VII violation." Id.  The Supreme Court cautioned however that the alleged unlawful

conduct does not have to be so serious as to cause psychological harm, Id. at 21-22, 114 S. Ct. at 370-71, but rather, the allegations may still give rise to a legitimate claim if they are serious enough to "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." Id. at 22, 114 S. Ct. at 371. Significantly, the Court explained that the standard for a hostile work environment "cannot be[ ] a mathematically precise test" and that all of the circumstances must be considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 22-23, 114 S. Ct. at 371. Finally, after showing sufficiently severe conduct to create the hostile work environment, the Title VII plaintiff must establish "a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999)).

Plaintiff does not make any new allegations in her complaint in support of her claim for a hostile work environment. Instead, plaintiff incorporates by reference her preceding allegations of discrimination and retaliation as a basis for her claim. Defendants contend plaintiff's allegations are insufficient to constitute a hostile work environment because they are not so extraordinarily severe to amount to a change in working conditions.

Fatal to plaintiff's hostile work environment claim is her failure to offer any facts of a sexually hostile work environment or any other hostile conditions based upon gender. Hostile work environment claims under Title VII are consistently rejected when the plaintiff neglects to plead facts that objectively rise to a level of hostility *based upon her membership*

*in a protected class*, i.e., in this case, plaintiff's status as a woman. See, e.g., Murray-Dahnir v. Loews Corp., No. 99-CV-9057 (LMM), 1999 WL 639699, at *4 (S.D.N.Y. Aug. 23, 1999); Ortega v. New York City Off-Track Betting Corp., No. 97-CV-7582 (KMW), 1999 WL 342353, at *4 (S.D.N.Y. May 27, 1999); Oteri-Harkins v. City of New York, No. 97-CV-2309 (JG), 1998 WL 817689, at *7 (E.D.N.Y. Feb. 5, 1998).  For many of the same reasons why plaintiff's discrimination claims will be dismissed, plaintiff does not provide sufficient evidence for a rational conclusion that the alleged hostile work environment was created by sex-related conduct.  Although additional employment actions may be considered by this Court because the 300 day statute of limitations for plaintiff's discrimination and retaliation claims does not apply in the context of her hostile work environment claim, none of the actions of which she complains demonstrate objectively hostile or abusive behavior on account of her gender. See Murray-Dahnir, 1999 WL 639699, at *4 ("The amended complaint fails to allege any acts or comments which are even racial in nature.  While the above facts, if proven, might support plaintiff's discriminatory failure to promote claim, they do not support his claim of a racially hostile work environment.").

Allegations similar to those put forth by plaintiff do not give rise to a claim for hostile work environment.  For example, in Ortega v. New York City Off-Track Betting Corp., the plaintiff was a woman who brought forth a hostile work environment claim based upon her allegations that she was subjected to disparaging comments about her weight, whereas other overweight male employees were not subjected to such comments; that she was denied promotions on account of, *inter alia*, her gender; that she was passed over for promotion while male employees with lesser skills, training, and seniority were given raises and promotions during the same time period; that she was and another female employee of the

same ethnicity were the only employees terminated during the relevant time period; and that women were required to associate on a social with their supervisors basis after business hours in order to receive good work assignments. 1999 WL 342353, at *4.  The Ortega Court held that the

> facts fail[ed] to support plaintiff's claim that the actions taken by defendant created an atmosphere that was abusive or hostile because of plaintiff's race, ethnicity, or sex–i.e., that the alleged hostile environment was created by race-related, ethnicity-related, or sex-related conduct on the part of defendant.  This is a fundamental and necessary element of a hostile environment claim under Title VII.

Id.  Much like the plaintiff in Ortega, the plaintiff in this case complains of adverse employment actions such as inequalities in assignments, promotions, and workplace responsibilities that were allegedly the result of her gender.  Such complaints of discrimination are insufficient to establish that plaintiff's work environment was "permeated with 'discriminatory intimidation, ridicule, and insult,'" see Harris, 510 U.S. at 21, 114 S. Ct. at 370 (quoting Meritor Sav. Bank, FSB, 477 U.S. at 65, 106 S. Ct. at 2405), because the alleged acts are not gender related in nature.  In any event, plaintiff wholly neglects to address this argument in their response to defendants' motion and offers only a brief statement that a determination of unlawful hostility in the workplace is often best decided by a jury rather than a court.  Despite this truism, more evidence of gender related abuse or hostility is needed to survive summary judgment.  Therefore, plaintiff's hostile work environment claim will be dismissed pursuant to defendants' motion.

### C.  Plaintiff's Claims Against Defendants Pursuant to the New York's Human Rights Law

Plaintiff also puts forth a discrimination claim under the New York State Human Rights Law ("HRL"), N.Y. EXECUTIVE LAW § 296 (2000).  Discrimination claims under the HRL "are evaluated using the same analytical framework used in Title VII actions." Burniche v. Gen. Elec. Automation Serv., Inc., 306 F. Supp. 2d 233, 238-39 (N.D.N.Y. 2004) (quoting Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001)).  Additionally, although described as an "unlawful discriminatory practice" within the statute, the HRL prohibits retaliation taken against anyone who complains of behavior prohibited under the statute. See, e.g., True v. New York State Dep't of Corr. Servs., 613 F. Supp. 27, 31 (W.D.N.Y. 1984); Modiano v. Elliman, 262 A.D.2d 223, 223 (N.Y. App. Div. 1st Dep't 1999); New York State Office of Mental Retardation and Developmental Disabilities v. New York State Div. of Human Rights, 164 A.D.2d 208, 210-11 (N.Y. App. Div. 3d Dep't 1990).  Therefore, to the extent plaintiff's claims of retaliation and discrimination under Title VII were considered and will be dismissed, plaintiff's corresponding HRL discrimination claims will also be dismissed.

Despite the same legal standard as Title VII claims, however, the HRL allows recovery for discriminatory acts within three years of the filing of the complaint. Bonner v. Guccione, 178 F.3d 581, 584 (2d Cir. 1999).  Accordingly, three of plaintiff's allegations of discrimination that were dismissed pursuant to the statute of limitations for Title VII–(1) the removal of plaintiff on May 10, 1999, from her position as Public Information Officer; (2) the transfer of plaintiff on June 7, 1999, to the Technical Operation Section of the SPD; and (3) the transfer of plaintiff on August 16, 1999, to Uniform Patrol Division, resulting in the

surrender of plaintiff's police-issued car, beeper, and telephone–warrant consideration as

alleged violations of the HRL. See Id.

## 1.  A *Prima Facie* Case of Discrimination

As already discussed with Title VII claims of discrimination, a plaintiff alleging

discrimination in violation of the HRL must first satisfy the four prongs of establishing a *prima*

*facie* case. See Farias, 259 F.3d at 98 (holding the same burden-shifting analysis applies to

HRL claims); Weinstock, 224 F.3d at 41 (identifying the four prongs of establishing a prima

facie case of discrimination); see also McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824.

Defendants concede plaintiff was engaged in a protected activity and is a member of a

protected class, thereby satisfying the first and second prongs of establishing a *prima facie*

case.

### a.  The Removal as Public Information Officer

With respect to the May 10, 1999, removal of plaintiff from her position as Public

Information Officer, plaintiff fails to establish how this removal constituted an adverse

employment action under the applicable case law.  It is undisputed that plaintiff's salary did

not change as a result of her removal.  Although plaintiff could nevertheless demonstrate an

adverse employment action by showing a substantial reduction in material responsibilities,

Galabya, 202 F.3d at 640 (citing Crady, 993 F.2d at 136), plaintiff does not submit any

evidence of a reduction in responsibilities following the May 10, 1999, transfer.  Much to the

contrary, plaintiff was given the opportunity in her deposition to explain whether she had

"fewer responsibilities" after her removal from the Public Information Officer position, but

plaintiff expressly declined to characterize her responsibilities as "fewer" and instead

described her new responsibilities as "different." Defs'. Ex. D, Pl's. Dep., 78-79.

It deserves mention that different, rather than fewer, responsibilities does not remove the possibility that the alleged discriminatory act was sufficiently adverse, however. See Torres, 116 F.3d at 632.  A *significant alteration* of workplace responsibilities could satisfy the third prong of establishing a *prima facie* case of discrimination so long as a reasonable person would believe their working conditions were worsened by the change in responsibilities. Id.  Nevertheless, plaintiff admits in her deposition that she received the same benefits, salary, and work schedule following the May 10, 1999, transfer, Defs'. Ex. D, Pl's. Dep., 78-79, and fails to direct the Court's attention to any evidence of why a reasonable person, let alone herself, believed her employment conditions had been worsened by the May 10, 1999, transfer.  Plaintiff's expert states his opinion that male sergeants in the SPD are given more supervisory authority than female sergeants, but nowhere in his report does he state plaintiff was stripped of any of her supervisory authority because of her removal as Public Information Officer.  Even assuming *arguendo* that plaintiff's removal as Public Information Officer necessarily entailed a *substantial reduction* in her material responsibilities, plaintiff does not address defendants' legitimate, non-discriminatory reason for the removal, namely that defendant Bernardi received complaints about plaintiff's behavior with respect to her interaction with members of the media.  Further discussion of that issue is premature, however, as plaintiff fails to demonstrate that the May 10, 1999, removal constituted an adverse employment action .  Therefore, the claim with respect to plaintiff's removal from the Public Information Officer position will be dismissed.

### b.  The Transfer to the Technical Operations Section

Similarly, plaintiff fails to show that her June 7, 1999, transfer to the Technical Operations Section of the SPD resulted in a substantial reduction of her material employment

responsibilities.  Although defendants concede that plaintiff's responsibilities changed, plaintiff does not offer any evidence of a significant decrease in her role within the SPD or how a reasonable employee may have concluded her employment conditions were worsened by the transfer.  Plaintiff admits that she retained the same salary and work schedule and explains that she remained in a supervisory role at the SPD. Id. at 85-86.  In short, plaintiff does not point to any evidence of a substantial reduction in her material employment responsibilities as a result of the transfer to the Technical Operations Section.  Therefore, plaintiff has not provided a factual basis for concluding that "a reasonable employee would find the conditions of her employment altered for the worse," Torres, 116 F.3d at 632, and plaintiff's claim of discrimination arising from the June 7, 1999, transfer will be dismissed.

### c. The Transfer to the Uniform Patrol Division

Unlike her other claims that may be considered under the HRL, plaintiff presents sufficient evidence of how her August 23, 1999, transfer to the Uniform Patrol Division constituted an adverse employment action.  Plaintiff explains in her deposition testimony that she was required to report to roll call at specified times and drive a marked police vehicle while responding to dispatched calls for police assistance. Defs'. Ex. D, Pl's. Dep. at 91. Plaintiff further explains that she was required to work weekends after her transfer to the Uniform Patrol Division and could no longer wear plainclothes while on duty. Id. at 92-93. Plaintiff has thus presented evidence of how a reasonable person could have concluded her employment conditions had been altered for the worse, thereby satisfying the third prong of establishing a *prima facie* case of discrimination with respect to the August 23, 1999, transfer.

Despite such evidence as to her altered responsibilities, however, plaintiff fails to offer adequate evidence giving rise to an inference of gender discrimination.  Unlike with her

subsequent transfer from Uniform Patrol Division to the Community Relations Division,

plaintiff does not offer any evidence of disparate treatment surrounding the transfer to

Uniform Patrol Division.  Plaintiff's complaint is wholly insufficient for the purposes of this

specific allegation of discrimination as it merely states: "*On information and belief*, male

officers of equal seniority or position are not transferred from their positions absent a request

for reassignment or for justifiable disciplinary reasons." Pl's Second Am. Compl., ¶ 23

(emphasis added).  As has already been discussed, such conclusory allegations devoid of

personal knowledge or other factual support are insufficient to survive a motion for summary

judgment. Smith v. Am. Exp. Co., 853 F.2d 151, 155 (2d Cir. 1988) (citing Meiri, 759 F.2d at

998).  Further, plaintiff flatly denied during her deposition that her transfer to the Uniform

Patrol Division was the result of gender discrimination. Defs'. Ex. D, Pl's. Dep., 89.  Although

plaintiff explains that two men were removed from the Uniform Patrol Division during the

same relevant time period as her transfer, she later admits she does not know if it was

because of her gender or rather because of herself in particular. Id. at 89-90.[6]  Additionally,

no allegations are made or facts presented as to the two male officers who were removed

from the Uniform Patrol Division (plaintiff does not identify their names) and whether they are

similarly situated to plaintiff aside from their obviously different genders.  Without evidence

allowing a rational factfinder to infer plaintiff suffered disparate treatment or that the transfer

was otherwise motivated by plaintiff's gender, plaintiff has not satisfied the fourth prong of

_____

[6] Plaintiff repeatedly asserts during her deposition: "[T]hat transfer was made because of me." Upon clarifying her statement, plaintiff states the August 23, 1999, transfer "could have been because I was a female, could have been because of me," before she admits that she is unsure of whether the transfer was because of her gender. Defs'. Ex. D., Pl's. Aff., 89-90.

establishing a *prima facie* case of gender discrimination.  Therefore, her claim arising from the August 23, 1999, transfer to the Uniform Patrol Division will be dismissed.

To summarize the ruling with respect to plaintiff's three claims that are untimely under Title VII but timely under the HRL, plaintiff fails to satisfy her initial, albeit minimal, burden of establishing a *prima facie* case under the McDonnell Douglas burden-shifting analysis.  See 411 U.S. at 802, 93 S. Ct. at 1824.  Plaintiff does not provide sufficient evidence of how the first two changes in her position constituted adverse employment actions.  Moreover, even when viewing the facts in the light most favorable to the plaintiff, she does not provide adequate evidence giving rise to an inference of gender discrimination concerning her transfer to the Uniform Patrol Division.  Plaintiff has had ample opportunity to conduct discovery and yet does not direct the Court's attention to any evidence from which a factfinder could determine her transfer to the Uniform Patrol Division was motivated by her status as a woman.  In light of plaintiff's failure to carry her burden to establish a *prima facie* case, no consideration of the legitimate, non-discriminatory reasons proffered by defendants for the allegedly discriminatory conduct is necessary and plaintiff's remaining claims under the HRL will be dismissed.  See id.

### D.  Plaintiff's Claims Under 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States."  West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988).  A plaintiff must also show "that the alleged deprivation was committed by a person acting under color of state law."  Id.  A defendant's "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law, is action taken 'under color of state law.'" <u>United States v. Classic</u>, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941) (external citations omitted).

Plaintiff's claims asserted under § 1983 may be summarized as follows: (1) she was denied her Fourteenth Amendment right of equal protection under state and federal law because of defendants' unlawful discriminatory practices and policies; (2) plaintiff's Fourteenth Amendment Due Process rights were violated by way of her liberty interest in her name and reputation when defendants unlawfully retaliated against her by publicizing her suspension and deliberately criticizing her performance; and (3) plaintiff's First Amendment right to free speech was violated when defendants unlawfully retaliated against her because of her complaints of discrimination.

## 1. **Plaintiff's Equal Protection Clause Claim Pursuant to § 1983**

The Fourteenth Amendment protects state employees from discrimination on the basis of sex. <u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>, 365 F. 3d 107, 117 (2d Cir. 2004). Defendants correctly explain that a "plaintiff must prove she suffered purposeful or intentional discrimination on the basis of her gender" in order to prevail on her § 1983 claim. <u>Id</u>. at 118. Most importantly, "[i]n analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework for Title VII claims." <u>Annis v. County of Westchester</u>, 136 F.3d 239, 245 (2d Cir. 1998) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 n.1, 113 S. Ct. 2742, 2747-48 n.1 (1993)); <u>Sorlucco v. New York City Police Dep't</u>, 888 F.2d 4, 7 (2d Cir. 1989).

In light of plaintiff's failure to carry her burden under the third stage of the <u>McDonnell Douglas</u> burden-shifting analysis with respect to her Title VII claims of discrimination, no further discussion of plaintiff's discrimination claims under § 1983 is

necessary.  Indeed, the Second Circuit previously considered virtually the same issue and explained:

> [T]he plaintiff pleaded in the amended complaint not only a Title VII claim, but also a claim under 42 U.S.C. §§ 1981, 1983.  The claims of discrimination which we have already discussed are specifically within Subchapter VI of Title 42 § 2003 *et seq.*, which deals exclusively with equal employment opportunities *and therefore makes reference to §§ 1981 and 1983 superfluous.  No greater or lesser protection against discriminatory practices is provided in the latter sections* and we do not understand appellant to argue otherwise.

Carrion v. Yeshiva University, 535 F.2d 722, 729 (2d Cir. 1976) (emphasis added).  In short, § 1983 does not give rise to a separate cause of action for unlawful discrimination based upon the same allegations plaintiff has already asserted under her Title VII claim.  See Id.

Separate from the litany of allegations within her Title VII claim of discrimination, however, is plaintiff's allegation that defendants' were deliberately indifferent to violations of her Fourteenth Amendment right of equal protection by failing to intervene or otherwise prevent the unlawful conduct within the SPD. Pl's. Second Am. Compl., ¶ 71.  Although this allegation is not included among the alleged Title VII violations within plaintiff's complaint, it is nonetheless premised upon the same allegedly discriminatory actions already discussed.  In other words, plaintiff does not present any additional factual allegations for the basis of this claim that have not already been considered.  Under the McDonnell Douglas framework, plaintiff has not established a sufficient evidentiary basis to survive summary judgment as to her claims of unlawful discrimination.  Therefore, because the Title VII burden-shifting analysis is also used for discrimination claims brought under § 1983, see Annis 136 F.3d at 245; Sorlucco, 888 F.2d at 7, plaintiff's § 1983 claims under the Equal Protection Clause of the

Fourteenth Amendment will be dismissed for the same reasons as her Title VII discrimination claims.[7]

## 2. **Plaintiff's Due Process Clause Claim Pursuant to § 1983**

Plaintiff has asserted her right to due process was violated when defendants publicized her suspension in local newspapers on the ground that she has a liberty interest in her good name, reputation, and profession. Although at times seemingly amorphous, the meaning of "liberty" as it stands within the Fourteenth Amendment's Due Process Clause cannot include plaintiff's interest against having to endure defamatory remarks from state officials. See Paul v. Davis, 424 U.S. 693, 711-12, 96 S. Ct. 1155, 1165-66 (1976). The United States Supreme Court's holding in Paul v. Davis could not be more clear on this issue:

> [T]he interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions.[8] Kentucky law does not extend to

---

[7] The Court recognizes that plaintiff also alleges she is warranted relief under § 1983 because of a continued policy and practice of discrimination against female employees within the SPD. Particularly problematic is that plaintiff fails to state a federal statute or provision of the United States Constitution under which this specific claim arises. Pl's. Second Am. Compl., ¶¶ 74-77. See Gonzaga University v. Doe 536 U.S. 273, 285 122 S. Ct. 2268, 2276 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently secured by the Constitution and laws of the United States. One cannot go into court and claim a violation of § 1983–for § 1983 by itself does not protect anyone against anything.") (internal quotations omitted). Even if the court were to infer that plaintiff's stated claim arose under the Equal Protection Clause of the Fourteenth Amendment, plaintiff (1) bases her claim in large part upon the other alleged acts of discrimination for which she cannot satisfy her burden under the McDonnell Douglas analysis; and (2) does not submit adequate additional evidence to overcome summary judgment. For all of these reasons, plaintiff's claim in ¶¶ 74-77 of her second amended complaint will not be further discussed and will be likewise dismissed.

[8] The Court here referred to Bell v. Burson, 402 U.S. 535, 91 S. Ct. 1586 (1971) and Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593 (1972) in which, respectively,

*(continued...)*

respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law.

Id.

Like the plaintiff in Paul v. Davis, plaintiff cannot show she the "denial of any right vouchsafed to [her] by the State and thereby protected under the Fourteenth Amendment." Id. at 712, 96 S. Ct. at 1166.  Indeed, plaintiff was never terminated and still retains her employment today where she is among the highest paid police officers within the SPD, regardless of rank.  Plaintiff should not be allowed to use § 1983 and the Due Process Clause as a conduit for her defamation claim arising under state law.  Therefore, plaintiff's Due Process Clause claim under § 1983 will be dismissed.

### 3.  Plaintiff's First Amendment Claim Pursuant to § 1983

Plaintiff alleges defendants' retaliatory conduct has interfered with her unfettered right to freedom of speech under the First Amendment by constituting an attempt to dissuade her from seeking relief for her complaints of discrimination.  The legal framework for First Amendment retaliation claims brought under § 1983 is virtually identical to the McDonnell

---

[8](...continued)
the Court considered a plaintiff's due process right to a hearing before a state deprived a plaintiff of his right to operate a motor vehicle and a parolee's right to remain outside incarceration so long as his parole conditions were not violated. Paul v. Davis, 424 U.S. at 711, 96 S. Ct. at 1165.

Douglas burden-shifting analysis used for Title VII retaliation claims. See, e.g., Hale v. Mann, 219 F.3d 61, 70 (2d Cir. 2000); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994).  A plaintiff alleging unlawful retaliation in violation of his First Amendment rights and bringing suit under § 1983 must "initially demonstrate by a preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him." Hale, 219 F.3d at 70 (quoting Morris, 196 F.3d at 110).  Also similar to Title VII retaliation claims is the requirement that plaintiff's evidence establish "a causal connection . . . sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." Blum, 18 F.3d at 1010.  If the plaintiff can satisfy this burden, the defendant must "demonstrate . . . that it would have undertaken the same adverse employment action 'even in the absence of the protected conduct.'" Id. (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977)).

        No further analysis is required as the legal standards for Title VII retaliation claims and First Amendment retaliation claims brought pursuant to § 1983 are the same for the purposes of plaintiff's lawsuit.  Defendants concede this issue in as much as they expressly decline to address plaintiff's First Amendment claims separately from her Title VII retaliation claims, explaining their belief that the legal issues are the same for both claims. See Defs'. Mem. Summ. J., 13, n.5.  Therefore, plaintiff's First Amendment retaliation claims brought pursuant to § 1983 will not be dismissed to the extent of this Court's ruling with respect to plaintiff's Title VII retaliation claims.

### E. **Plaintiff's Defamation Claim Under New York State Law**

In light of the denial of defendants' motion to dismiss plaintiff's retaliation claims arising under federal law, the Court retains supplemental jurisdiction over plaintiff's state law defamation claim. 28 U.S.C. § 1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966).

To survive summary judgment for a defamation claim, a plaintiff must present sufficient evidence for a jury to conclude: (1) defendant made a false statement; (2) the statement was "of or concerning" the plaintiff; (3) the statement was published without privilege or authorization to a third party; and (4) the statement caused the plaintiff harm or constituted defamation per se. Brian v. Richardson, 87 N.Y.2d 46, 51 (1995); Dillon v. City of New York, 261 A.D.2d 34, 38 (N.Y. App. Div. 1st Dep't 1999). Notably, the plaintiff must plead in her complaint the particular words giving rise to her claim. N.Y. C.P.L.R. 3016(a) (2008). Additionally, a defamation plaintiff in New York must set forth in her complaint the time, place, manner of the allegedly defamatory statement as well as the persons to whom the statement was made. Balduzzi v. City of Syracuse, No. 96-CV-824, 1997 WL 52434, at *6 (N.D.N.Y. Feb. 4, 1997) (citing Vardi v. Mut. Life Ins. Co. of New York, 136 A.D.2d 453, 455 (N.Y. App. Div. 1st Dep't 1988); Dillon, 261 A.D.2d at 38; Arsenault v. Forquer, 197 A.D2d 554, 556 (N.Y. App. Div. 2d Dep't 1993).

An exhaustive review of plaintiff's second amended complaint reveals plaintiff fails to plead with the requisite particularity the persons to whom the allegedly defamatory statement was made. At most, plaintiff pleads in her complaint that defendants made defamatory statements when they "contacted the newspapers," Pl's. Second Am. Compl., ¶ 48, and "announced through the media including news broadcasts on local television," Id. at ¶ 86.

Such assertions are quite broad when considering the multitude of news and other media organizations.  Plaintiff neglects to make any specific identification of the media outlets to which such statements were made or through which companies such statements were published, thereby allegedly causing her harm.  Plaintiff's attempt to remedy her pleading defect with information included in her memorandum of law is insufficient, particularly in light of the fact that she has already been permitted to amend her complaint on two different occasions.  Therefore, plaintiff's defamation claim arising under New York State law will be dismissed.[9]

### F.  Plaintiff's Claim of Intentional Infliction of Emotional Distress

Under New York law, a plaintiff alleging intentional infliction of emotional distress ("IIED") must present evidence of extreme and outrageous conduct in order to survive a motion for summary judgment.  Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303 (1983).  With respect to what behavior will constitute extreme and outrageous conduct, there must be an evidentiary basis for a reasonable factfinder to conclude that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

---

[9] The Court recognizes that plaintiff has made a cursory assertion of additional claims in the same section of her complaint that states her defamation claim.  In this section, plaintiff alleges, *inter alia*, "abuse of process, negligence, and gross negligence under the law of the State of New York."  Pl's. Second Am. Compl., ¶ 83.  With respect to these specific claims, plaintiff fails to adequately plead the causes of action.  Unlike her other claims warranting discussion, plaintiff does not direct the Court's or the defendants' attention to which factual allegations give rise to these claims.  There is no pleading as to any duty owed by the defendants to plaintiff, let alone any allegation as to proximate cause.  Further, although brief, defendants contend that they owed no duty to plaintiff, Defs'. Mem. Summ. J., 25, n.9, and plaintiff fails to address this argument in any of her response papers.

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1977)).

The degree of outrageousness needed to sustain a claim of IIED "is so difficult to reach that, of the [IIED] claims considered by the Court of Appeals, 'every one has failed because the alleged conduct was not sufficiently outrageous.'" Seltzer v. Bayer, 272 A.D.2d 263, 264 (N.Y. App. Div. 1st Dep't 2000) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993)).  Plaintiff alleges that defendants' release of private and protected employment information contained in her personnel file and allegedly false statements made about her work performance were intended to cause her harm and are sufficient to form the basis of her IIED claim.  This behavior falls far short of the conduct needed to sustain a claim for IIED, however, because the publication of plaintiff's complaint of discrimination, as well as the defendants' comments in regards to the complaint, does not offend "all bounds of decency" as required under New York law.

Equally supportive of the dismissal of plaintiff's IIED claim is state case law barring IIED claims when "a substantial portion of plaintiff's claim for the intentional infliction of emotional distress is based on the very same factual allegations in the defamation cause of action." Stern v. Burke, No. 103916/07, 2008 WL 2420907, at *3 (N.Y. Sup. Ct. June 16, 2008) (citing Hirschfeld v. Daily News L.P., 269 A.D.2d 248, 250 (N.Y. App. Div. 1st Dep't 2000)); see also Herlihy v. Metro. Museum of Art, 214 A.D.2d 250, 263 (N.Y. App. Div. 1st Dep't 1995).  Based upon her complaint, plaintiff's IIED claim arises from the same factual allegations as does her defamation claim.  Accordingly, her IIED claim will be dismissed.

### G.  Plaintiff's Breach of Contract Claim

It is undisputed that plaintiff is a member of the SPD Police Officer's Union.  Both parties also agree that plaintiff is entitled to rely on provisions within the collective bargaining agreement "(CBA") negotiated between the Union and the City of Syracuse.  Plaintiff brings a breach of contract claim against defendants on the grounds that they violated provisions within the CBA prohibiting discrimination and retaliatory discipline.  Defendants' motion papers fail to state any grounds, let alone even a request, for the dismissal of plaintiff's breach of contract claim.  At the same time, however, plaintiff's breach of contract claim arises from the same factual allegations as her claims of unlawful discrimination and retaliation.  Accordingly, plaintiff's contract claim will be dismissed to the same extent that her claims of unlawful discrimination and retaliation are also dismissed.

### H.  Plaintiff's Claims Against Defendant Lemm and Motion to Amend the Complaint

Separate consideration of plaintiff's claims against defendant Lemm is necessary given defendant Lemm's status as a retired police officer at the time the alleged discriminatory and retaliatory conduct occurred.  Additionally, defendant Lemm is the only defendant represented by counsel separate from that of the other named defendants and has moved for summary judgment on grounds that are particular to his status as a retired police officer.  Also warranting separate consideration is plaintiff's motion to amend her complaint as the proposed amendment only concerns a claim asserted against defendant Lemm.  Defendant Lemm opposes plaintiff's motion.

### 1.  Plaintiff's First Amendment Claim Against Defendant Lemm Pursuant to § 1983

Plaintiff asserted in her second amended complaint that defendant Lemm, along with another unidentified defendant, "John Doe," acted in concert to retaliate against plaintiff for her complaints of discrimination and in an attempt to dissuade her from pursuing relief.  Pl's. Second Am. Compl., ¶ 96.  Plaintiff has pleaded that such conduct constituted a violation of her First Amendment Rights and is actionable pursuant to 42 U.S.C. § 1983.  As stated earlier, § 1983 provides a cause of action for the violation of rights created by the United States Constitution or federal statute.  A plaintiff may not bring a § 1983 claim, however, without showing that the defendant acted under color of state law. West v. Atkins, 487 U.S. at 48, 108 S. Ct. at 2254-55.

Even if plaintiff's allegations are assumed true, defendant Lemm lacked the requisite connection to the City of Syracuse or the SPD for purposes of a § 1983 claim.  As defendant Lemm explains in support of his motion for summary judgment, it is undisputed that defendant Lemm was retired from the SPD nearly eleven months prior to the date of the alleged harassing telephone message.  Plaintiff does not offer any argument to the contrary in her response papers to defendant Lemm's motion.  For these reasons, defendant Lemm's motion to dismiss all claims brought against him pursuant to § 1983 will be granted.

### 2.  Plaintiff's Motion to Amend the Second Amended Complaint

Instead of opposing defendant Lemm's argument that he never acted under color of state law, plaintiff seeks to circumvent this defect by amending the complaint to include a claim under the New York State HRL.  Plaintiff's strategy is to add a cause of action against defendant Lemm pursuant to the HRL because the state statute does not require the

defendant acted under color of state law.  Unlike § 1983, the HRL provides a cause of action against *anyone* who aids, abets, incites, compels, or coerces another to commit conduct that is otherwise prohibited by the statute.  See N.Y. EXECUTIVE LAW § 296(6) (2000).

Plaintiff's motion to amend the complaint must be denied for several reasons.  First, the method by which plaintiff's counsel has sought to amend the complaint is particularly improper and justifies substantial criticism.  The appearance of plaintiff's proposed third amended complaint leaves this Court with the impression that plaintiff's counsel literally taped a small cut-out of paper with the words "AND THE NYS HUMAN RIGHTS LAW, N.Y. Exec. Law § 296, et seq." onto the top of plaintiff's second amended complaint within ¶ 96 and then photocopied the page so that the HRL claim was included in the complaint. Such a practice is wholly improper and should be condemned.  Second, as defendant Lemm points out in his supplemental memorandum in support of his motion for summary judgment, plaintiff seeks to amend her complaint seventy-seven months after commencement of her lawsuit.  Such a large lapse of time between the initiation of plaintiff's claim and the proposed amendment to her complaint certainly cuts against the argument for why plaintiff should now be permitted to amend her complaint.  Indeed, plaintiff is unable to offer any explanation for why the amendment was not proposed earlier. Third, plaintiff has already amended her complaint on two different occasions. Plaintiff has thus been given the opportunity to assert new theories under which she may be entitled to relief.  Another opportunity to alter the form of her case in order to defeat a motion for summary judgment is unfair to defendant Lemm.  Therefore, plaintiff's motion to amend her complaint will be denied.  Fourth, plaintiff's proposed amendment is

unnecessary for the reasons stated below in consideration of the HRL cause of action against defendant Lemm.

### 3.  Plaintiff's HRL Cause of Action Against Defendant Lemm

Plaintiff's proposed amendment to add a HRL cause of action against defendant Lemm is unnecessary in light of the fact that plaintiff has already pleaded a HRL claim against all named defendants in her second amended complaint. See Pl's. Second Am. Compl., ¶ 79.  Contrary to defendant Lemm's assertions, plaintiff identifies defendant Lemm as a named defendant in the action in ¶ 12 of the second amended complaint. Additionally, ¶ 94 of the second amended complaint incorporates by reference the preceding paragraphs, including the HRL cause of action within ¶ 79.

The HRL prohibits, *inter alia*, the following conduct as an "unlawful discriminatory practice:" (1) employer discrimination on the basis of an employee's gender, age, race, creed, national origin, or marital status; (2) employer discrimination "against any person because he has opposed any practices forbidden under this article;" and (3) the conduct of anyone, regardless of whether they are an employer, in an effort to aid, abet, incite, compel, or coerce another to engage in behavior that is otherwise prohibited by the statute. N.Y. EXECUTIVE LAW §§ 296(1)(a), (1)(e), (6).  Plaintiff pleaded in ¶ 79 that the defendants committed "unlawful discrimination" as defined in, and in violation of, the HRL.  Having already identified defendant Lemm as a defendant in ¶ 12 of her complaint, plaintiff effectively asserted a HRL claim against defendant Lemm within ¶ 79.  The fact that ¶ 79 was incorporated by reference within the subsequent paragraphs specifically addressing defendant Lemm supports the notion that defendant Lemm was given notice of plaintiff's HRL cause of action.  While plaintiff does not have an action pursuant to § 1983 against

defendant Lemm for any alleged violation of her First Amendment Rights, plaintiff may assert a claim of unlawful discrimination against defendant Lemm under subsection (e) of the HRL on the grounds that defendant Lemm aided in the commission of unlawful discrimination as defined within the statute.

Plaintiff's allegations against all other defendants focus upon defendants' allegedly unlawful motivation for engaging in conduct that both parties agree to have occurred.  The allegations against defendant Lemm are different, however.  Rather than dispute the motivation for engaging in the alleged conduct, defendant Lemm disputes the conduct altogether and contends he neither conspired with anyone to act against plaintiff nor left a harassing telephone message on plaintiff's answering machine.

In support of her allegations, plaintiff offers evidence of the answering machine recording, her report filed with the SPD complaining of the harassing messages she received and documenting the circumstances surrounding the phone calls, and her own self-identification of defendant Lemm as one of the two callers who left harassing messages.  Additionally, there is deposition testimony from defendant Lemm explaining that he was contacted by an officer within the SPD and provided information with respect to the allegations made against him, including a copy of plaintiff's report of harassment, prior to plaintiff's filing of this lawsuit and after he retired from the SPD.

Taken in the light most favorable to the plaintiff, a reasonable factfinder could certainly believe plaintiff's version of the truth, namely that defendant Lemm aided others in the unlawful discrimination against plaintiff as defined by the HRL when he allegedly left a harassing message on plaintiff's answering machine.  In particular, there are credibility determinations to be made as to defendant Lemm's denial that he ever left a harassing

telephone message on plaintiff's answering machine and plaintiff's belief that she identified defendant Lemm's voice when listening to one of the messages. The other surrounding facts also permit the inference that defendant Lemm violated the HRL. Although a jury may indeed believe defendant Lemm's denial of any wrongdoing, plaintiff is not required at this stage of the litigation to present facts that entirely disprove defendant Lemm's account of what may have occurred. Therefore, plaintiff's HRL claim against defendant Lemm will not be dismissed.

## IV. <u>CONCLUSION</u>

To summarize, plaintiff was unable to carry her burden under the <u>McDonnell Douglas</u> burden shifting analysis with respect to her claims for discrimination and hostile work environment. On the other hand, plaintiff did carry her burden for establishing pretext for many of the allegations of retaliation. With exception to her allegations concerning the denial of an overtime assignment and the sub-par evaluations she received, plaintiff has submitted sufficient evidence to establish pretext and overcome defendants' motion for dismissal of her retaliation claims under Title VII.

Plaintiff's claims arising under the HRL must be dismissed to the same extent her claims under Title VII will be dismissed. In regard to the additional claims that are not time-barred under the HRL, plaintiff has failed to establish a *prima facie* case under the applicable burden shifting standard. Plaintiff has presented sufficient evidence, however, to survive summary judgment as to her HRL claims against defendant Lemm. Plaintiff's second amended complaint asserted an HRL claim against defendant Lemm, thereby rendering the proposed third amended complaint unnecessary. Accordingly, defendant

Lemm's motion for summary judgment as to the HRL claim and plaintiff's motion to amend her complaint will both be denied.

Plaintiff's state law claims all suffer from various defects.  Plaintiff inadequately pleaded her defamation claim by failing to allege to whom the supposedly defamatory statement was communicated, thereby warranting dismissal under New York State law. Plaintiff's claim for IIED failed to show evidence of sufficiently outrageous conduct, and in any event, dismissal is justified because the basis for plaintiff's IIED claim arose from the same factual allegations surrounding her defamation claim.  Similarly, plaintiff's breach of contract claim is premised upon the same factual assertions as her claims of discrimination and retaliation.  Consequently, plaintiff's breach of contract claim will be dismissed to the same extent as her Title VII claims of discrimination and retaliation.

Section 1983 provides plaintiff a mechanism for seeking relief only to the extent that a federal right has been violated.  Additionally, the defendant must act under the color of law.  Plaintiff's Equal Protection Clause claim brought under § 1983 will therefore be dismissed because her same claims of discrimination were also dismissed under Title VII and no additional protection of her rights is provided under § 1983.  Plaintiff's Due Process Clause claim will also be dismissed because plaintiff does not have a liberty interest in her name or reputation.  Plaintiff's First Amendment claim brought under § 1983 will be dismissed to the same extent as her retaliation claims because the same legal standard applies to both causes of action.  Lastly, plaintiff's § 1983 claims against defendant Lemm will be dismissed because he is not alleged to have acted under color of law.

**V.  ORDER**

Therefore, it is

ORDERED that

1.  Defendants' motion for summary judgment is GRANTED as to the following claims asserted by plaintiff and these claims are DISMISSED:

(1) all claims arising under Title VII against each named defendant in his individual capacity;

(2) all claims arising under Title VII alleging unlawful conduct occurring prior to September 19, 1999;

(3) all claims of discrimination against defendants arising under Title VII;

(4) all claims of hostile work environment against defendants arising under Title VII;

(5) claims of retaliation under Title VII and of unlawful discrimination as defined in the HRL against defendants based upon plaintiff's allegations that she was unlawfully denied her request for an overtime assignment on November 28, 2000, received sub-par evaluations following her complaints of discrimination, and defendant Rathbun's issuance of a report criticizing plaintiff's work performance;

(6) all claims of defamation, libel, or slander against defendants arising under state law;

(7) all claims of IIED against defendants arising under state law;

(8) plaintiff's breach of contract claim against defendants for alleged discrimination;

(9) all claims of abuse of process, negligence, and gross negligence against defendants arising under state law;

(10) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's rights under the Equal Protection Clause;

(11) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's rights under the Due Process Clause;

(12) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's rights under the First Amendment based upon the denial of plaintiff's request for an overtime assignment on November 28, 2000, the sub-par evaluations of plaintiff following her complaints of discrimination, and defendant Rathbun's issuance of a report criticizing plaintiff's work performance; and

(13)  as a result, all claims against defendants Police Chief Falge, Deputy Chief Robert Tassone, and Lieutenant Mike Rathbun are dismissed.

2.  Defendants' motion for summary judgment as to the following claims asserted by plaintiff is DENIED:

(1) claims of unlawful retaliation under Title VII and of unlawful discrimination as defined in the HRL against defendants based upon defendants' comments to newspaper reporters, the directive banning plaintiff from the ABC Office and requiring her to issue internal memoranda for future informational requests, defendants' arbitration counsel's statements to plaintiff's arbitration attorney offering to forego criminal charges in exchange for plaintiff's voluntary discontinuance of her complaint, plaintiff's ten day suspension for use of a photocopier for personal reasons and the pursuit of criminal charges, and the reading of Miranda warnings to plaintiff for allegedly filing a false injury report;

(2) the breach of contract claim based upon alleged unlawful retaliation;

(3) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's First Amendment rights based upon defendants' comments to newspaper reporters, the directive banning plaintiff from the ABC Office and requiring her to issue internal memoranda for future informational requests, defendants' arbitration counsel's statements to plaintiff's arbitration attorney offering to forego criminal charges in exchange for plaintiff's voluntary discontinuance of her complaint, plaintiff's ten day suspension for use of a photocopier for personal reasons and the pursuit of criminal charges, and the reading of <u>Miranda</u> warnings to plaintiff for allegedly filing a false injury report.

3.  Defendant Lemm's motion is DENIED as to plaintiff's claim of unlawful discrimination under the HRL and GRANTED with respect to his liability for all of plaintiff's remaining claims.

4.  Plaintiff's motion to amend her second amended complaint is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 29, 2008
      Utica, New York.

To clarify, the following issues remain to be resolved at trial: (1) the liability and damages, if any, against First Deputy Chief of Police Boyle for unlawful discrimination under the HRL as a result of Mr. Boyle's directive barring plaintiff from the ABC Office and requiring

her to file internal memoranda in connection with future requests for information; (2) the liability and damages, if any, against City Corporation Counsel Rick Guy and Mayor Roy Bernardi for unlawful discrimination under the HRL as a result of Mr. Guy's and Mr. Bernardi's comments to newspapers; (3) the liability and damages, if any, against Captain Kerwin for unlawful discrimination under the HRL as a result of Mr. Kerwin's reading of <u>Miranda</u> warnings to plaintiff; (4) the liability and damages, if any, against retired police officer Lemm for unlawful discrimination under the HRL as a result of his alleged harassing telephone message left on plaintiff's answering machine; and (5) the liability and damages, if any, against the City of Syracuse for unlawful discrimination under Title VII, unlawful discrimination under the HRL, violation of plaintiff's First Amendment rights, and breach of the Police Union's contract as a result of (a) the conduct specified above with exception to the alleged actions of defendant Lemm, (b) defendants' arbitration counsel's statements to plaintiff's arbitration attorney offering to forego criminal charges in exchange for plaintiff's voluntary discontinuance of her complaint, and (c) plaintiff's ten day suspension and the SPD's corresponding pursuit of criminal charges.