UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THERESE LORE,

                        Plaintiff,                              5:00-CV-1833-DNH-DEP

            v.

CITY OF SYRACUSE; CITY OF SYRACUSE
POLICE DEPARTMENT; CHIEF OF POLICE
JOHN FALGE, in his individual and official
capacity; FIRST DEPUTY CHIEF DANIEL
BOYLE, in his individual and official capacity;
DEPUTY CHIEF ROBERT TASSONE, in his
individual and official capacity; CITY OF
SYRACUSE MAYOR ROY BERNARDI; in his
individual and official capacity; LT. MIKE
RATHBUN, in his individual and official
capacity; CAPT. MIKE KERWIN, in his
individual and official capacity; RICK GUY,
CITY CORPORATION COUNSEL, in his
individual and official capacity; MICHAEL
LEMM, in his individual and official capacity;
and JOHN DOE, in his individual and official
capacity,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:

A.J. BOSMAN, ESQ.
Attorney for Plaintiff
6599 Martin Street
Rome, New York 13440

KEVIN E. HULSLANDER, ESQ.
Attorney for Defendants
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street
Suite 600
Syracuse, New York 13202

GABRIELLE HOPE, ESQ.
Attorney for Defendants
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street
Suite 600
Syracuse, New York 13202

THOMAS J. MILLER, ESQ.
Attorney for Defendant Michael Lemm
Office of Thomas J. Miller
314 East Fayette Street
Syracuse, New York 13202


DAVID N. HURD
United States District Judge


**MEMORANDUM-DECISION and ORDER**

## I.  INTRODUCTION

Plaintiff Therese Lore brought suit against defendants City of Syracuse, City of Syracuse Police Department ("SPD"), SPD Chief of Police John Falge, SPD First Deputy Chief Daniel Boyle, SPD Deputy Chief Robert Tassone, Syracuse Mayor Roy Bernardi, SPD Lieutenant Mike Rathbun, SPD Captain Mike Kerwin, Syracuse Corporation Counsel Rick Guy, Michael Lemm, and John Doe.  All defendants with exception to defendant Lemm (hereinafter referred to together as "defendants") collectively moved for summary judgment as to plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.  Defendant Lemm moved separately for summary judgment on additional grounds not asserted by defendants as to the claims against him.  Plaintiff opposed both motions and cross-moved for leave to amend her second amended complaint pursuant to Federal Rule of Civil Procedure 15.  Defendant Lemm opposed plaintiff's cross-motion for leave to amend.

On October 30, 2008, defendants' motion was granted in part and denied in part. Lore v. City of Syracuse, ___ F. Supp. 2d ___, No. 5:00-CV-1833-DNH-DEP, 2008 WL 4736654, at *32-33 (N.D.N.Y. Oct. 30, 2008).  Defendant Lemm's motion was also granted in part and denied in part. Id. at *33.  Plaintiff's motion for leave to amend was denied. Id.

Plaintiff now moves for reconsideration of the decision to the extent defendants' motion for summary judgment was granted.  Defendant opposes plaintiff's motion for reconsideration and cross-moves for reconsideration of the decision to the extent their motion for summary judgment was denied.  Plaintiff opposes defendants' cross-motion. Defendant Lemm has not filed a motion or a response to plaintiff's motion.  Both motions were taken on submit without oral argument.

## II.  BACKGROUND

Familiarity with the factual circumstances leading to plaintiff's allegations is assumed as the parties have been litigating this suit for nearly eight years. See Lore, 2008 WL 4736654, at *1-3 (discussing the relevant facts).  Plaintiff asserted the following claims in her second amended complaint: (1) that she was discriminated against on the basis of her gender while working as a SPD police officer in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (hereinafter "Title VII"), 42 U.S.C. § 1983 (hereinafter "§1983"), and the New York Human Rights Law, N.Y. EXECUTIVE LAW § 296 (2000) (hereinafter "HRL"); (2)  that she was retaliated against for reporting and complaining of discrimination in violation of Title VII and § 1983; (3) that she was harmed as a result of a hostile work environment in violation of Title VII; (4) that she suffered injury as a result of defendants' defamatory remarks; and (5) that defendants breached a contract negotiated by the Police Officers' Union on behalf of plaintiff and other police officers.

Upon consideration of the parties' motions, defendants' motion for summary judgment was granted as to the following claims and these claims were dismissed: (1) all claims arising under Title VII against each named defendant in his individual capacity; (2) all claims arising under Title VII alleging unlawful conduct occurring prior to September 19, 1999; (3) all claims of discrimination against defendants arising under Title VII; (4) all claims of hostile work environment against defendants arising under Title VII; (5) claims of retaliation under Title VII and of unlawful discrimination as defined in the HRL against defendants based upon plaintiff's allegations that she was unlawfully denied her request for an overtime assignment on November 28, 2000, received sub-par evaluations following her complaints of discrimination, and defendant Rathbun's issuance of a report criticizing plaintiff's work performance; (6) all claims of defamation, libel, or slander against defendants arising under state law; (7) all claims of Intentional Infliction of Emotional Distress ("IIED") against defendants arising under state law; (8) plaintiff's breach of contract claim against defendants for alleged discrimination; (9) all claims of abuse of process, negligence, and gross negligence against defendants arising under state law; (10) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's rights under the Equal Protection Clause of the United States Constitution; (11) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's rights under the Due Process Clause of the United States Constitution; and (12) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's First Amendment rights based upon the denial of plaintiff's request for an overtime assignment on November 28, 2000, the sub-par evaluations of plaintiff following her complaints of discrimination, and defendant Rathbun's issuance of a report criticizing plaintiff's work performance. Lore, 2008 WL 4736654, at *32.  As a result, all individual

claims against defendants Police Chief Falge, Deputy Chief Robert Tassone, and Lieutenant Mike Rathbun were dismissed. Id.

Defendants' motion for summary judgment was denied with respect to plaintiff's other claims, including: (1) claims of unlawful retaliation under Title VII and of unlawful discrimination as defined in the HRL against defendants based upon defendants' comments to newspaper reporters, the directive banning plaintiff from the Audit and Budget Control Office ("ABC Office") and requiring her to issue internal memoranda for future informational requests, defendants' arbitration counsel's statements to plaintiff's arbitration attorney offering to forego criminal charges in exchange for plaintiff's voluntary discontinuance of her complaint, plaintiff's ten day suspension for use of a photocopier for personal reasons and the pursuit of criminal charges, and the reading of Miranda warnings to plaintiff for allegedly filing a false injury report; (2) claims brought against defendants pursuant to § 1983 alleging denial of plaintiff's First Amendment rights based upon the same factual allegations; and (3) the breach of contract claim based upon alleged unlawful retaliation in violation of the terms of the SPD Union's collective bargaining agreement with defendants.

Plaintiff now moves for reconsideration of the decision to the extent defendants' motion for summary judgment was partially granted.  Specifically, plaintiff requests clarification as to whether her claims of disparate overtime assignments have been dismissed, reconsideration of the decision to dismiss all of her discrimination and retaliation claims against defendant Falge, and reconsideration of the decision to dismiss her discrimination claims arising from her removal from the Public Information Officer ("PIO") position.

Defendants oppose plaintiff's motion and cross-move for reconsideration of the decision to the extent their motion for summary judgment was denied.  In particular, defendants request reconsideration of the decision to deny summary judgment for plaintiff's claims of unlawful discrimination under the HRL against defendants Bernardi and Guy for comments allegedly made to newspapers.  Defendants have also sent a letter requesting either the preclusion of plaintiff's exhibit C from consideration or that plaintiff provide defense counsel with a copy of the exhibit.  The exhibit is not available electronically as it has been sealed by court order.

Plaintiff opposes defendants' cross-motion and argues that defendants' motion should be denied because it is untimely and improperly raises new arguments that were not raised in support of their motion for summary judgment.  Further, plaintiff agrees to provide defense counsel with a scanned copy of exhibit C, thereby eliminating the need for discussion of defendants' request to preclude the exhibit.  Because the timeliness of defendants' motion for reconsideration is a threshold issue that can be easily decided, it will be addressed before the other arguments.

III.  **MOTION FOR RECONSIDERATION**

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. Delaney v. Selsky, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864 (1983)).  The question presented is therefore limited to whether the prior decision constituted a clear error of law as

neither party argues that there has been a change in the controlling law or makes a showing of additional evidence that was not previously available.

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2458 (1986).  After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial. FED. R. CIV. P. 56; Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### A.  Compliance with Local Rule of Practice 7.1(g)

Plaintiff argues that defendants' cross-motion for reconsideration should be denied for failure to comply with Local Rule of Practice 7.1(g) for the Northern District of New York. Local Rule 7.1(g) provides, in pertinent part: "[A] party may file and serve a motion for reconsideration or reargument no later than **TEN CALENDAR DAYS** after the entry of the challenged judgment, order, or decree." N.D.N.Y. L.R. 7.1(g) (emphasis in original).  The

challenged order was entered on October 30, 2008, and, according to the electronic docket, notice of the challenged order was sent to both parties on the same day.

Although the language of the rule seems to clearly reflect the intention to include non-business days, the Federal Rules of Civil Procedure dictate otherwise. Pursuant to Federal Rule of Civil Procedure 6(a)(2), weekends and holidays are excluded from the counting of the days for which a party's motion must be filed to be considered timely when the applicable period is less than eleven days. FED. R. CIV. P. 6(a)(2). The rule applies for computing any time period specified in any local rule, court order, or statute. See id. Therefore, pursuant to Local Rule 7.1(g) and Federal Rule 6(a)(2), both parties had until November 13, 2008 to file their respective motions for reconsideration. Despite this requirement, defendants' cross-motion was not filed until November 25, 2008.

Plaintiff correctly asserts that defendants' cross-motion for reconsideration may not "piggyback" onto plaintiff's own motion for reconsideration. See Benjamin v. Fraser, No. 75-CV-3073 (HB), 2001 WL 282705, at *7 (S.D.N.Y. March 22, 2001); Tisdel v. Barber, 968 F. Supp. 957, 963 (S.D.N.Y. 1997); see also, Fox v. City Univ. of New York, 187 F.R.D. 83, 91 (S.D.N.Y. 1999) (holding the untimeliness of defendants' cross-motion for a new trial was not alleviated by the timeliness of plaintiff's motion for a new trial). Notably, Local Rule 6.3 for the Southern District of New York parallels the Northern District's Rule 7.1(g). See S.D.N.Y. L.R. 6.3. As the Tisdel court explained, a cross-motion is not analogous to an amendment to a prior-made motion. 968 F. Supp. at 963. Rather, cross-motions are separate motions altogether and cannot be considered to have been made at the same time as an opposing party's original motion. Id. Defendants' cross-motion for reconsideration is therefore untimely and will be denied.

**B.  Plaintiff's Request for Clarification as to any Claims of Disparate Overtime Assignments**

Plaintiff seeks clarification as to whether a claim of unlawful discrimination arising from alleged disparate overtime assignments has been dismissed.  Plaintiff contends evidence submitted in the form of a report from one of her expert witnesses, Dr. Charles Kroll, was overlooked and raises evidentiary issues to be decided by a jury.  Plaintiff's brief, two-and-one-half page memorandum of law in support of her motion for reconsideration is devoted to the significance of statistical evidence and argues that Dr. Kroll's report provides sufficient evidence of disparate assignments for male and female officers within the SPD.

**1.  Plaintiff's Second Amended Complaint**

Plaintiff's request for clarification as to whether her claim of unlawful discrimination with respect to unequal overtime assignments was dismissed is the result of plaintiff's poorly written complaint.  With respect to the allegations plaintiff made relating to unlawful discrimination in violation of Title VII, the only mention of an issue as to *plaintiff's* overtime assignments is within paragraph 25 of the second amended complaint.  In that paragraph, plaintiff explains she had previously entered into a settlement agreement with the SPD, but later felt the SPD "had failed to comply with the terms of the settlement by, among other things, failing to provide overtime comparable to that of sergeants assigned within the community relations division, as was promised to the Plaintiff." Pl's. Second Am. Comp., ¶ 25, Dkt. No. 43.  The remainder of the paragraph states: "The Defendants misrepresented the position to which Plaintiff was to be assigned and otherwise failed to carry out and violated the settlement and the promises made to the Plaintiff in resolution of the grievances." Id.

Plaintiff's assertion of unequal overtime assignments did not allege a basis for why she was discriminated against.  Nowhere in that paragraph of the complaint does plaintiff state that male officers received greater amounts of overtime or more desired assignments than she received herself.  Instead, plaintiff's allegation appears more akin to a breach of contract claim as she argues that defendants failed to comply with the terms of her settlement agreement by providing more overtime to other sergeants in the same division. The basis for a Title VII cause of action was not sufficiently pleaded as plaintiff failed to state a claim of unlawful discrimination with respect to the alleged unequal assignment of overtime detail.  In contrast, every other allegation under plaintiff's Title VII cause of action includes a charge of unlawful discrimination stemming from plaintiff's gender and alleges that male officers were provided with benefits or privileges that plaintiff was denied.  See Pl's. Second Am. Comp., Dkt. No. 43, ¶¶ 21-24, 26-33.  Absent an allegation that the disparities in overtime assignments were the result of unlawful discrimination on account of plaintiff's gender, plaintiff did not state a claim of unlawful discrimination under Title VII.

The only other mention of overtime assignments with respect to plaintiff's Title VII cause of action is within paragraph 31 of the second amended complaint.  Plaintiff generally asserts in paragraph 31 that the SPD has a custom and practice to discriminate against women by way of assigning female officers to "traditional[ly] female" positions within the department and that such positions offer less opportunities for overtime assignments.  While evidence in support of this allegation may serve to support some of plaintiff's other claims, the paragraph does not state a claim of unlawful discrimination suffered by plaintiff.  Rather, it is a general allegation as to the practices of the SPD and unlawful discrimination suffered by all female officers.  Unlike the other assertions made by plaintiff which stated specific

instances of allegedly unlawful discrimination and were therefore given due consideration, plaintiff's general assertion that defendants discriminate against women by placing female officers in different positions does not state a claim upon which she can be granted relief.

## 2. Consideration of Dr. Kroll's Report

Even if plaintiff's complaint alleged a basis for unlawful discrimination leading to disparate overtime assignments, plaintiff failed to identify sufficient evidence for her claim to survive defendants' motion for summary judgment.  Plaintiff presently argues that the report of one of her experts, Dr. Charles Kroll, provides evidence of the statistical disparities in the overtime and other professional opportunities afforded female officers in comparison to male officers within the SPD.  Indeed, plaintiff's entire memorandum in support of her motion for reconsideration is devoted to the significance of statistical analysis and the argument that Dr. Kroll's report was given inadequate consideration.  Despite the proffered importance of Dr. Kroll's findings, plaintiff raised no argument involving Dr. Kroll's report, his findings, or his deposition until after defendants' motion for summary judgment was already decided.

The need for parties to cite specifically to the record and illuminate upon the triable issues of fact is paramount in cases such as plaintiff's.  The instant lawsuit has undisputably consisted of a long, arduous contest between the parties.  The case first began in December of 2000, and over 240 docket entries had been filed by the time defendants' motion for summary judgment was decided on October 30, 2008.  The parties have also engaged in a lengthy and highly contested discovery period over the course of several years after various extensions were granted.  Boxes of discovery material have been filed with the clerk's office, including thousands of pages of deposition transcripts, affidavits, internal police files, and other exhibits for trial.  Further, as plaintiff's counsel was well aware, the case was relatively

recently reassigned to the undersigned on February 21, 2008, thereby adding to the difficulty of gaining familiarity with the case and identifying the relevant evidence presented.  For all of these reasons, the obligation of the attorneys to specifically cite, or at least reference, the evidence in support of their clients' positions was especially important within the context of this case. See Powell v. Bucci, No. 04-CV-1192, 2006 WL 2052159, at *2 (N.D.N.Y. July 21, 2006) ("[I]t is the duty of the parties, not the Court, to sift through the record and bring to the Court's attention the pertinent information that may create or defeat a triable issue of fact.")

Despite this obligation, plaintiff neither mentioned Dr. Kroll in her memorandum of law nor discussed his findings and how they might provide sufficient evidence to allow her claim of disparate overtime assignments to proceed to trial.  Only after defendants' motion for summary judgment was partially granted did plaintiff raise an argument as to Dr. Kroll's statistical analysis and how his findings may present a genuine issue for trial.

A review of plaintiff's memorandum of law is particularly revealing on this issue. Under the section entitled, "Point II: Sufficient Issues of Fact Exist for this Case to Go to Trial," plaintiff identified her expert witnesses, W. Ken Katsaris. See Pl's. Mem. Opp'n Summ. J., Dkt. No. 180, 5.  As discussed in the decision of defendants' motion for summary judgment, most of Mr. Katsaris's opinions addressed plaintiff's allegations of unlawful retaliation rather than any instances of discrimination. See Lore, 2008 WL 4736654, at *10. Moreover, Mr. Katsaris failed to conduct any analysis of the adverse employment actions taken by defendants with respect to plaintiff. Id.  Instead, Mr. Katsaris made blanket assertions as to systemic discrimination throughout the SPD. Id.  As a result, his opinions did not present sufficient evidence of a triable fact with regard to any claim of disparate overtime

assignments. Id.  Notably, plaintiff's motion for reconsideration does not contest the

evidentiary determinations made with respect to Mr. Katsaris's opinions.

At the start of the very next paragraph, plaintiff argued that her expert's disclosure

contained undisputed statistical disparities serving as evidence of her unequal overtime

assignments in comparison to her male counterparts. Pl's. Mem. Opp'n Summ. J., Dkt. No.

180, 5.  Unexplainably, however, the name of the expert providing the statistical analysis was

not provided. Id.  Furthermore, plaintiff failed to provide any citation to an exhibit letter or

number where such evidence may have been found within the voluminous discovery

material. Id.  Even more surprising is the utter lack of discussion concerning the proffered

evidence.  Id.  Plaintiff makes no mention where to find the exhibit to be considered and does

not offer even a cursory statement of the expert's findings except that there are "statistical

disparities." Id.  Throughout her memorandum of law and her attorney's affirmations, the only

expert identified by name is Mr. Katsaris.  As a result, plaintiff provided no basis for the

inference that Dr. Kroll was the expert who had conducted a statistical analysis of the

overtime assignments within the SPD.  Although plaintiff was required to provide much more

than a mere inference as to the identity of an expert witness who is argued to provide

evidence of a triable issue of fact, plaintiff failed in even that limited regard.  It is plaintiff's

counsel's obligation to identify the evidence which may raise a genuine issue of fact and to

present her client's argument fully and clearly.  In any event, the logical inference was that

Mr. Katsaris, and not Dr. Kroll, was the "expert" plaintiff was referring to because he is the

only expert identified in her memorandum of law and was identified in the paragraph

preceding the brief mention of statistical disparities in overtime assignments between male

and female officers.  Consequently, Mr. Katsaris's, instead of Dr. Kroll's, opinions were

considered and determined to be insufficient to present a genuine issue of material fact as to any claims of unlawful discrimination. See Lore, 2008 WL 4736654, at *10 (holding Mr. Katsaris only presented sufficient evidence as to plaintiff's claims of unlawful retaliation).

The only instance in which Dr. Kroll's name appears is within plaintiff's response to defendants' statement of material facts. See Pl's. Resp. to Statement of Material Facts, Dkt. No. 178, ¶ 33. Pursuant to Local Rule 7.1(a)(3), the opposing party to a summary judgment motion must file a response to the moving party's statement of material facts admitting or denying each of the movant's assertions. N.D.N.Y. L.R. 7.1(a)(3). Upon choosing to deny any of the facts asserted, "[e]ach denial shall set forth a *specific* citation to the record where the factual issue arises." Id. (emphasis added). In paragraph 33 of her response to defendants' statement of material facts, plaintiff denies she received equal amounts of overtime detail and includes a parenthetical citation to "(Lore Affidavit; Katsaris Deposition; Deposition of Charles Kroll, Ph.D. ('Kroll Deposition') and Expert Disclosure.)" Pl's. Resp. to Statement of Material Facts, Dkt. No. 178, ¶ 33. Despite the local rule's requirement that plaintiff provide a specific citation to the record, no exhibit identifier was provided. Even more deficient was the fact that no page numbers were provided for the citations to either of the experts' depositions, particularly in light of the fact that Mr. Katsaris's and Dr. Kroll's depositions are 95 and 107 pages, respectively.

This is not to say that a party's failure to provide exhibit letters and page numbers necessarily demands that such evidence be ignored. Admittedly, even the most strict application of Local Rule 7.1(a)(3) could forgive counsel's omission of a specific citation in her response to the statement of material facts if adequate guidance in locating the proffered evidence was provided elsewhere. However, the most critical issue is that plaintiff's present

argument–that Dr. Kroll's statistical analysis provides sufficient evidence of a genuine issue of fact to be decided by a jury–was never raised in her opposition to defendants' motion for summary judgment.  Had plaintiff at least argued that Dr. Kroll's analysis provides sufficient evidence as to a claim of unlawful disparate overtime assignments and offered even a limited discussion of his findings, Dr. Kroll's opinions would have been afforded greater consideration when deciding defendants' motion for summary judgment.

Plaintiff's argument in support of her motion for reconsideration begs the question: if Dr. Kroll's analysis was the primary source of evidence with regard to the claim of disparate overtime assignments, why were his findings, let alone even his name, never discussed in plaintiff's counsel's affirmation or plaintiff's memorandum of law? In light of the extensive discovery material comprising of the record, including the lengthy documents plaintiff urges consideration of, a specific citation was clearly warranted.  It is of no question that "[c]ourts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material." Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys., 309 F.3d 433 (7th Cir. 2002).[1]  With not so much as a mention of Dr. Kroll's name, his report, any specifics as to his findings, page citations, exhibit identifiers, or an argument as to how his findings may present sufficient issues of fact for trial, plaintiff's counsel inexcusably shirked her duty to provide guidance for evaluating the relevant evidence.  Therefore, even if plaintiff's complaint alleged a basis for unlawful discrimination

---

[1] Plaintiff filed thousands of pages of exhibits in opposition to defendants' motion for summary judgment. See Civil Case No. 5:00-CV-1833, Dkt. Nos. 152-177. Significantly, plaintiff's counsel included a number of exhibit identifiers and corresponding page numbers in her affirmations, but Dr. Kroll's name, report, or deposition was never mentioned or identified in either document. See Bosman Affirmation, Dkt. No. 151; Bosman Supplemental Affirmation, Dkt. No. 215-2.

leading to disparate overtime assignments, plaintiff failed to identify sufficient evidence for her claim to survive defendants' motion for summary judgment.

## C.  **Dismissal of Plaintiff's Discrimination and Retaliation Claims Against Defendant Falge**

Plaintiff also moves for reconsideration of the dismissal of all discrimination and retaliation claims against defendant Falge.  Despite urging the reconsideration of the decision to dismiss these claims, plaintiff fails to properly submit any argument as to how the decision constituted a clear error of law.  As previously mentioned, plaintiff's memorandum of law in support of her motion for reconsideration is entirely devoted to the importance of statistical evidence in regard to a claim of disparate overtime assignments.  The only argument raised as to the claims asserted against defendant Falge appears vaguely in counsel's affirmation in support of plaintiff's motion for reconsideration. See Bosman Affirmation Supp. Mot. for Recons., Dkt. No. 243-2, ¶¶ 5, 16.  To the extent that an argument is raised in plaintiff's counsel's affirmation, this argument is improperly made because "[a]n affidavit must not contain legal arguments but must contain factual and procedural background as appropriate for the motion being made." N.D.N.Y. L.R. 7.1(a)(2); see also Zlotnick v. Hubbard, 572 F. Supp. 2d 258, 273, n.18 (N.D.N.Y. 2008).

Even if plaintiff's argument submitted within her attorney's affirmation is considered, her argument is limited to defendant Falge's liability for threats of criminal prosecution made to plaintiff and the initiation of disciplinary proceedings against plaintiff after she illegally seized other officers' pay stubs. See Bosman Affirmation Supp. Mot. for Recons., Dkt. No. 243-2, ¶ 16.  Focusing upon plaintiff's second amended complaint, paragraph 47 asserts:

> Plaintiff was charged administratively for using a copier for personal use and suspended from duty for two weeks.  On information and belief, the City of Syracuse also approached the Onondaga County District Attorney's office and unsuccessfully sought criminal charges.  No officer has ever been similarly charged nor suspended, and offenses which are for more serious than that for which Plaintiff was charged are treated less severely.

Pl's. Second Am. Comp., ¶ 47, Dkt. No. 43.  Nowhere in her complaint does plaintiff allege defendant Falge charged her administratively or sought criminal charges.  Instead, plaintiff accuses the "City of Syracuse" of unlawfully retaliating against her pursuant to Title VII for seeking criminal charges and charging her administratively.  Additionally, all claims under Title VII against defendants in their individual capacities were properly dismissed, and plaintiff does not seek reconsideration of this issue.  See Lore, 2008 WL 4736654, at *4.

Most importantly, plaintiff's claim of unlawful retaliation stemming from these incidents was determined to present genuine issues of triable fact, and accordingly, defendants' motion for summary judgment was denied with respect to this claim. See id. at *18.  Although all claims against defendant Falge were dismissed for lack of evidence sufficient to raise an issue of fact, id. at *32, for the reasons already articulated in the decision, see id. at *18, plaintiff may proceed with her claim of unlawful retaliation against the party she alleged committed the violation of Title VII, i.e., the City of Syracuse. See  Pl's. Second Am. Comp., ¶ 47, Dkt. No. 43.  It is therefore unclear, particularly based upon the limited argument presently raised by plaintiff, see Bosman Affirmation Supp. Mot. for Recons., Dkt. No. 243-2, ¶ 16, what matter is left for reconsideration.  Consequently, plaintiff's motion for reconsideration of the decision to dismiss the claims against defendant Falge will be denied.

**D.  Dismissal of Plaintiff's Discrimination Claims for her Removal from the Position of Public Information Officer**

Plaintiff also moves for reconsideration of the decision to dismiss her discrimination claims arising from her removal from the position of Public Information Officer ("PIO") on May 10, 1999.  Plaintiff does not meaningfully contest the decision that her claim under Title VII for her removal from the PIO position was time barred under the applicable statute of limitations.  See Lore, 2008 WL 4736654, at *4-5.  Instead, plaintiff appears to concede the statute of limitations issue but maintains that "even if the removal of the Plaintiff from her PIO position was not timely for purposes of Title VII, it certainly was timely for purposes of her New York State Human Rights Law and Fourteenth Amendment claims." Bosman Affirmation Supp. Mot. for Recons., Dkt. No. 243-2, ¶ 18.[2]

As already explained in the decision of defendants' motion for summary judgment, the HRL affords a longer statute of limitations, thereby permitting consideration of the evidence in support of plaintiff's claim under the HRL for her removal from the PIO position. Lore, 2008 WL 4736654, at *22.  The timeliness of plaintiff's HRL claim for her removal as PIO is therefore not at issue.  The question to be determined is instead whether it was a clear error of law to determine that plaintiff failed to establish a *prima facie* case of unlawful discrimination for her removal from the PIO position.

It was previously held that plaintiff failed to establish a *prima facie* with regard to her removal from the position of PIO because she presented insufficient evidence of how her

---

[2] Once again, plaintiff's memorandum of law in support of her motion for reconsideration is completely devoid of any argument as to why the decision to dismiss this claim should be considered; rather, plaintiff's counsel improperly asserts a limited argument within her affirmation, thereby violating Local Rule 7.1(a)(2).

removal constituted an adverse employment action under the applicable case law. Id. As discussed, plaintiff expressly refused to characterize her employment responsibilities after her removal from the PIO position as "fewer" and instead described her new responsibilities as "different." Id. (citing Defs'. Ex. D., Pl's. Dep., 78-79). This admission led, in part, to the determination that plaintiff did not show a substantial reduction in her material workplace responsibilities. Id.  Plaintiff now argues reconsideration of the decision to dismiss her claim is warranted because she offered sufficient evidence to determine defendants' legitimate, non-discriminatory reason for removing her from the PIO position was nothing more than pretext for an unlawful discriminatory motive. See Bosman Affirmation Supp. Mot. for Recons., Dkt. No. 243-2, ¶ 13.  According to plaintiff's counsel, plaintiff has satisfied the third prong of the applicable burden shifting analysis by submitting evidence showing plaintiff's replacement "was not similarly removed from his position after the mayor received complaints of him pushing a female camerawoman." Id.; see also Lore, 2008 WL 4736654, at *5 (discussing the burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973), applicable to all discrimination claims under Title VII and the HRL).

Although disparate treatment of someone outside plaintiff's protected class may constitute evidence of pretext, plaintiff's argument ignores the first two prongs of the McDonnell Douglas burden shifting analysis.  Before any consideration of whether a defendant's legitimate, non-discriminatory reason for an adverse employment action is pretext, the plaintiff must establish that the alleged act of unlawful discrimination constitutes an adverse employment action in the first instance. McDonnell Douglas, 411 U.S. at 802-04, 93 S. Ct. 1824-25; Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (explaining

that a plaintiff must show she suffered an adverse employment action to establish a *prima facie* case of discrimination).  Plaintiff's counsel states, without providing a citation to the record, that she "lost $6,000.00 in pay from 1999 to 2000, the year following her removal from the PIO position because she had 'too much power.'" Bosman Affirmation Supp. Mot. for Recons., Dkt. No. 243-2, ¶ 9.  Contrary to plaintiff's counsel's assertion, however, plaintiff testified in her deposition that she received the same salary, worked the same hours, and had access to the same benefits following her removal from the PIO position on May 10, 1999. See Lore, 2008 WL 4736654, at *22 (citing Defs'. Ex. D., Pl's. Dep., 78-79).  Plaintiff's own admissions, coupled with the lack of evidence that her material workplace responsibilities were substantially reduced, see id., supported the determination that plaintiff failed to demonstrate that her removal as PIO constituted an adverse employment action. Therefore, her claim was properly dismissed for failure to satisfy the first prong of the McDonnell Douglas burden shifting analysis, i.e., the establishment of a *prima facie* case.

## IV.  **CONCLUSION**

Plaintiff has failed to establish that any aspects of the prior decision was a clear error of law.  Plaintiff's failure to plead a basis for her allegation of unlawful discrimination with respect to any disparities in overtime assignments added ambiguity to the type of claim she asserted.  Moreover, plaintiff alleged the overtime assignments she received were violations of a settlement agreement rather than instances of unlawful gender discrimination. Most importantly, even if plaintiff's claim regarding overtime assignments included an allegation of unlawful discrimination because of her gender, plaintiff failed in every way possible to identify sufficient evidence in support of her claim.  It is difficult to reconcile the strenuousness with which she now urges the consideration of Dr. Kroll's report with the total

failure to even mention Dr. Kroll's name in her memorandum of law or her counsel's affirmation in opposition to defendants' motion for summary judgment.  The fact that plaintiff's other expert, Mr. Katsaris, was identified by name and then followed by a vague mention of "statistical disparities" could only lead to the inference that Mr. Katsaris was the expert witness to which plaintiff referred in her memorandum of law.  On top of this deficiency, the voluminous discovery material submitted by plaintiff emphasized the need for plaintiff to fulfill her obligation to provide guidance in evaluating the relevant evidence.  Contrary to what appears to be counsel's belief, "'[j]udges are not like pigs, hunting for truffles buried' in the record." Albrechtsen, 309 F.3d at 436 (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

Discussion of defendants' motion for reconsideration was limited to the issue of timeliness.  Even with the discounting of non-business days pursuant to Federal Rule of Civil Procedure 6(a)(2), defendants' motion was untimely pursuant to Local Rule 7.1(g) as it was not filed until November 25, 2008.

THEREFORE, it is

ORDERED that

1.  Plaintiff's motion for reconsideration is GRANTED; and

2.  Upon reconsideration, plaintiff's request to reinstate the claims against defendant Falge and for her removal from the position of PIO is DENIED; and

3.  Defendants' motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: December 22, 2008
   Utica, New York.

_____
United States District Judge